# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

IN THE MATTER OF THE APPLICATION OF ALLISON W. BROWN, JR.
FOR ADMISSION TO PRACTICE PURSUANT TO RULE 1A:1.

October 9, 1972.

Record No. 8058.

Present, All the Justices.

*Allison W. Brown, Jr., pro se.*

*Stuart H. Dunn,* Assistant Attorney General (*Andrew P. Miller,* Attorney General; *Vann H. Lefcoe,* Assistant Attorney General, on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

This matter involves the question of the validity of certain of the provisions of Rule 1:5 (now Rule 1A:1[1]), Rules of the Court, appli-

---

[1] "Rule 1A:1. Foreign Attorneys—When Admitted to Practice in this State without Examination.

"Any person who has been admitted to practice law before the court of last resort of any state or territory of the United States or of the District of Columbia may file an application to be admitted to practice law in this Commonwealth without examination, if counsel licensed to practice here may be admitted to practice there without examination.

"The applicant shall:

"(1) File with the clerk of the Supreme Court at Richmond an application, under oath, upon a form furnished by the clerk.

"(2) Furnish a certificate, signed by the presiding judge of the court of last resort of the jurisdiction in which he is entitled to practice law, stating that he has been so licensed for at least five years.

cable to the admission of foreign attorneys to practice law in this state without examination. Under the rule, as prerequisite to such admission, this court must determine that an applicant intends "to practice full time as a member of the Virginia bar." Rule 1A:1(4) (d), formerly Rule 1:5(4)(d).

On January 8, 1971, Allison W. Brown, Jr., a member of the bar of the United States Court of Appeals for the District of Columbia, filed with this court an application for admission to practice without examination pursuant to Rule 1:5. In his application, Brown stated that he was a permanent resident of Virginia and that he intended to practice full time as a member of the Virginia bar.

Brown's application was processed, and it was learned that he was employed as a Supervisory Attorney in the Appellate Court Branch of the National Labor Relations Board, Washington, D.C. In subsequent correspondence with the court regarding his plans, Brown stated that he did not intend to resign his employment and made it clear that, if admitted, he did not intend to practice full time as a member of the Virginia bar. On June 1, 1971, Brown was notified that his application had been refused because of his failure to comply with Rule 1:5(4)(d).

Following refusal of his application, Brown filed an action in the United States District Court for the Eastern District of Virginia against this court and its members. In that action, Brown attacked the constitutionality of our rule applicable to the admission of foreign attorneys without examination.

A three-judge court was convened, and on May 17, 1972, the

"(3) Furnish a report of the National Conference of Bar Examiners concerning his past practice and record.

"(4) Pay a filing fee of fifty dollars.

"Thereafter, the Supreme Court will determine whether the applicant:

"(a) Is a proper person to practice law.

"(b) Has made such progress in the practice of law that it would be unreasonable to require him to take an examination.

"(c) Has become a permanent resident of the Commonwealth.

"(d) Intends to practice full time as a member of the Virginia bar.

"In the determination of these matters the Supreme Court may call upon the applicant to appear personally before a member of the Court or its executive secretary and furnish such information as may be required.

"If all of the aforementioned matters are determined favorably for the applicant, he shall be notified that some member of the Virginia bar who is qualified to practice before the Supreme Court may make an oral motion in open court for his admission to practice law in this Commonwealth.

"Upon the applicant's admission he shall thereupon in open court take and subscribe to the oaths required of attorneys at law, whereupon he shall become an active member of the Virginia State Bar."

court granted a motion, filed on our behalf, for abstention upon our representation that Brown would be permitted to file with this court a petition for reconsideration of his application for admission. Brown filed the petition with us, the Virginia State Bar was granted leave to file a brief *amicus curiae*, and the matter was argued orally. The argument centered around the same points of alleged unconstitutionality of our rule as were presented in the action filed in the District Court.

Brown contends that our rule is unconstitutional because it denies him due process and equal protection of law. He argues, citing *Schware* v. *Board of Bar Examiners*, 353 U.S. 232 (1957), that the only matters into which we may properly inquire are his fitness and capacity to practice law, and he asserts that the rule requiring him to show that he intends to practice full time as a member of the Virginia bar has no rational connection with those matters.[2]

Our research has disclosed no decision directly in point upon the constitutional questions raised by Brown. The *Schware* case, relied upon by Brown, did not involve a denial of admission to practice law for failure to comply with a rule similar to our Rule 1A:1(4)(d). Instead, the case involved the denial by the Board of Bar Examiners of New Mexico of Schware's application to take the bar examination, the denial having been based upon the prior use of aliases by Schware, his former membership in the Communist Party, and a record of previous arrests. The Supreme Court held that refusal of Schware's application upon these grounds was a denial of due process and equal protection. In its opinion, the court did say, as Brown points out, that while a state may require high standards of qualification for admission to the bar, any qualification must have a rational connection with his fitness and capacity to practice law.

We think the *Schware* case supports our rule, contrary to what Brown argues. In our view, there is a rational connection of a full-time practice requirement with the qualification of capacity to practice, and we think later important action of the United States Supreme Court sustains this view.

Following *Schware*, the Supreme Court, in *Martin* v. *Walton*, 368 U.S. 25 (1961), dismissed for want of a substantial federal question

---

[2] Brown also makes an attack upon Rule 1:5.2 (now 1A:3), which provides that if an attorney who has been admitted to practice without examination no longer satisfies the full-time practice requirement, his license may be revoked. But since Brown does not base his refusal to commit himself to full-time practice upon a fear that his license might be later revoked, we will not consider this attack.

an appeal it had awarded from a decision of the Supreme Court of Kansas. The Kansas court's decision, reported under the name of *Martin* v. *Davis*, 187 Kan. 473, 357 P.2d 782 (1960), involved equal protection and due process attacks upon a Kansas rule and statute. The rule and statute provided in substance that "an attorney admitted to the Bar of Kansas who has been admitted to the Bar of another state and who is regularly engaged in the practice of law in that state shall associate local counsel before he can appear in the courts or before boards or commissions of Kansas." 187 Kan. at 475, 357 P.2d at 785.

The Kansas litigation began when Martin brought a mandamus action to compel a Kansas probate judge to permit him to file cases and to appear and try them without the association of local counsel. Mandamus was denied by the state district court, the Supreme Court of Kansas affirmed, and, as has been noted, the United States Supreme Court dismissed Martin's appeal for want of a substantial federal question.

The facts were interesting. Martin graduated from the University of Kansas Law School and was shortly thereafter licensed to practice law in Kansas and Missouri. He lived in Mission, Kansas, maintained an office there, and was attorney for that city. He was a member of the State Board of Tax Appeals of Kansas and of the state and local bar associations of Kansas. He had written an article on Kansas procedure which was published in the Kansas Law Review. But because he regularly practiced in the neighboring state of Missouri, Martin was denied the right to appear in Kansas courts without local counsel.

In dismissing Martin's appeal, the United States Supreme Court, citing *Schware* v. *Board of Bar Examiners, supra,* stated that the Kansas rule and statute were "not beyond the allowable range of state action under the Fourteenth Amendment." 368 U.S. at 25-26. The court further said that it could not "disregard the reasons given by the Kansas Supreme Court for the Rules in question." 368 U.S. at 26. We will advert to those reasons later.

We view the *Martin* case important because the Kansas Supreme Court recognized that the rule and statute there in question created two classes of attorneys. In the one class were the members of the Kansas bar regularly engaged in the practice of law in another state, who were required to associate local counsel, and in the other were the members of the Kansas bar not regularly engaged in the practice of law elsewhere, who were not so required. The court held that the

difference between the two classes rested upon a consideration which was real and not fanciful, justifying different treatment of the two.

Here, Brown contends, and rightly so, that Virginia has created two classes of attorneys. The first encompasses those attorneys licensed by examination (Code §§ 54-60 to -66), and the second includes those licensed without examination. As to the first class, there is no requirement of a preadmission showing of intent to practice full time as a member of the Virginia bar. As to the second, the requirement is imposed.[3]

Brown argues that this classification by Virginia is arbitrary. We disagree. We believe there is a real difference between the two classes, just as there was in *Martin*, and that the same considerations which upheld the different treatment in *Martin* uphold the different treatment here.

Brown stands in the same shoes as did Martin. Brown wants to remain regularly employed in activity other than practice in Virginia and yet practice here, without restriction, when the occasional opportunity arises.[4] That is exactly what Martin wanted—to practice regularly in Missouri and occasionally, without restriction, in Kansas. The same reasons prompting restriction of Martin's occasional practice in Kansas prompt denial of Brown's present application for admission.

The reasons advanced by the Kansas Supreme Court for its rule and statute were: difficulty in securing the presence of the attorneys officed in Missouri at the call of court dockets; inability to procure service on the Missouri-officed attorneys without having to proceed to another state; failure of the Missouri-based attorneys to answer calls to appear in matters of urgency; and failure of the out-of-state attorneys to familiarize themselves with the rules of local practice and procedure.

We believe those reasons apply with equal force to our Rule 1A:1(4)(d). Martin and the others in his class, all being licensed members of the Kansas bar, would ordinarily have been thought to possess sufficient qualifications to make unnecessary the association of local counsel. And yet, because of the situation that developed from their regular activity outside Kansas, the Kansas rule and statute were held necessary to attain the objectives of ensuring the

---

[3] We interpret our requirement to mean that an applicant must show that he intends to open an office in Virginia for the practice of law and to *regularly* engage in the practice of law in this state.

[4] Under Rule 1A:4, Brown may now "appear in and conduct a particular case" in a Virginia court. But he must associate local counsel.

orderly administration of justice and providing litigants with the services of knowledgeable resident attorneys.

If Brown and others like him in Virginia are admitted on Brown's terms, without the requirement of full-time practice, they would be in the same situation as were Martin and the others like him in Kansas before adoption of the Kansas rule and statute—free to engage in regular activity outside their home state and to practice without restriction at home when they wished. But the Kansas experience taught that there were in such a situation real dangers to the orderly administration of justice, and so the Kansas rule and statute were adopted. The same considerations make necessary the Virginia rule.

Brown is a good example of the necessity for our rule. He intends to remain employed full time in activity other than Virginia practice. He states that in his employment he appears "before every one of the 11 United States Courts of Appeals." It is not difficult to imagine, and quite understandable, what would happen if Brown's appearance was required before a Virginia court and at the same time his employment necessitated his presence in the Ninth Circuit Court of Appeals in California. His first allegiance, of course, is to his employer, but the necessary and resulting neglect of his Virginia duties goes directly to the question of his capacity to practice in this state.

In his employment, Brown must deal with a different body of law, different rules, and different practices from what he would encounter as a Virginia attorney. If he is admitted on his terms and retains his full-time employment, the demands of his position and the infrequency of his contacts with Virginia law would stand in the way of his becoming a proficient Virginia practitioner.

What Brown wants to do, and there are many more like him, is to "moonlight." We think there are potential evils, repugnant to the orderly administration of justice, inherent in that type practice. We think it should be discouraged in the public interest. Our rule is necessary to accomplish that public purpose. We hold the rule valid.

Brown makes a further contention. He says that the manner in which our rule is administered is unreasonable and arbitrary and, therefore, unconstitutional. Here, he complains of a letter dated April 22, 1971, addressed to him by the Executive Secretary of this court, asking whether Brown had retired from his employment in Washington, D.C. The letter stated that an application for admission normally is not approved if the applicant is employed at the time of filing of the application. Brown asserts that this means that

he must resign his employment and suffer a period of "enforced idleness as a condition of obtaining a Virginia license."

But Brown gives no importance to the word "normally" in the letter and no significance to the fact that in other parts of the letter the court was attempting to discover what he intended to do about his employment. *Normally*, we do not approve an application if the applicant is employed at the time of filing and if, upon later inquiry, he tells us, as Brown told us, that he has no intention of resigning his employment. But when the applicant answers the inquiry by stating that he will resign his employment upon approval of his application, it is approved. Should Brown tell us today that he will resign his employment if his application is approved, it would be approved, and he could time his resignation to be effective immediately prior to his formal admission. He would suffer no period of "enforced idleness," and this controversy would be at an end.

We know, of course, that Brown will not accept the invitation on those terms. So, upon reconsideration, his application is again refused.

*Application refused.*