766 F.2d 859
 54 USLW 2046
 Ronald L. GOLDFARB, Appellant,
v.
SUPREME COURT OF VIRGINIA; Allen L. Lucy, Clerk, Supreme
Court of Virginia; and Robert N. Baldwin,
Executive Secretary, Supreme Court of
Virginia, Appellees.
 No. 84-1928.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1985.
Decided July 3, 1985.
 
 Cornish F. Hitchcock, Washington, D.C., (Alan B. Morrison, Washington, D.C., John Cary Sims, on brief), for appellant.
 Gregory E. Lucyk, Asst. Atty. Gen., (Gerald L. Baliles, Atty. Gen., Richmond, Va., James T. Moore, III, Senior Asst. Atty. Gen., Richmond, Va., on brief), for appellees.
 Before SPROUSE and WILKINSON, Circuit Judges, and KAUFMAN, Chief United States District Judge for the District of Maryland, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 The Supreme Court of Virginia will admit an out-of-state attorney to the Commonwealth bar without examination only if the applicant intends to practice full-time in Virginia. The plaintiff, alleging that this requirement violates the Commerce Clause and the Due Process Clause, filed suit for declaratory and injunctive relief. The district court held that the rule does not exceed the authority of the Commonwealth or abridge the rights of the plaintiff, and it dismissed the complaint for failure to state a claim upon which relief could be granted. We affirm.
 
 
 2
 * Ronald L. Goldfarb has lived in Virginia and practiced law in the District of Columbia for almost twenty-five years.[1] After several clients asked that he represent them in Virginia, Goldfarb applied in January 1983 for admission without examination to the Virginia bar. The Supreme Court of Virginia, pursuant to Va.Code Sec. 54-67 and its Rule 1A:1(4)(d), permits admission without examination only if an applicant who has been licensed five years in another state "intends to practice fulltime as a member of the Virginia bar."[2] Because Goldfarb intended to divide his practice between an office in Virginia and an office in Washington, he did not satisfy the Supreme Court requirement and his application was denied in November 1983.
 
 
 3
 The Supreme Court decision left open to Goldfarb two paths by which he could practice in both Virginia and Washington, D.C. First, he could take the Virginia bar examination: if he passed, he would then be free to open a part-time office in the Commonwealth. Second, he could appear pro hac vice when asked to represent clients in Virginia, a procedure that he had previously followed but that he found unattractive due to the cost of paying affiliated local counsel.
 
 
 4
 Goldfarb instead pursued the path of admission without examination. He filed suit in the district court for the Eastern District of Virginia against the Supreme Court, its clerk, and its executive secretary. His complaint asserted that he would be admitted to the Virginia bar but for the restriction of Rule 1A:1(4)(d), a restriction that placed an unreasonable burden on interstate commerce and deprived Goldfarb of due process of law. He asked that the court declare the rule to be unconstitutional and that it enjoin the Supreme Court from enforcing the rule and denying Goldfarb admission to the bar. The defendant moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the motion, and Goldfarb appealed.
 
 II
 
 5
 Goldfarb first suggests that Rule 1A:1(4)(d) violates the Due Process Clause of the Constitution. He notes that "a state can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). The full-time commitment required for admission without examination, according to Goldfarb's analysis, shares no rational connection with his ability to practice law.
 
 
 6
 This due process challenge to the Virginia rule has been authoritatively rejected in Brown v. Supreme Court of Virginia, 359 F.Supp. 549 (E.D.Va.), aff'd mem. 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973), a case essentially identical to the present action. Brown raised the same due process claims that Goldfarb now urges, along with additional equal protection arguments, when the Supreme Court of Virginia denied his application for admission without examination because he intended to divide his time between Virginia and Washington, D.C. Application of Brown, 213 Va. 282, 191 S.E.2d 812 (1972). A three-judge federal panel upheld the rule against Brown's constitutional challenge, finding that the requirement rationally served the interest of Virginia in insuring the competence of attorneys practicing in the Commonwealth. Brown v. Supreme Court of Virginia, 359 F.Supp. at 561-562. The summary affirmance of this decision by the United States Supreme Court necessarily agreed that a rational basis lay beneath Rule 1A:1(4)(d), and we may not re-open that foreclosed question. See Hicks v. Miranda, 422 U.S. 332, 344-45 and n. 14, 95 S.Ct. 2281, 2289, and n. 14, 45 L.Ed.2d 223 (1975).
 
 
 7
 We recognize that Goldfarb's experience and familiarity with state law may be such that the full-time practice requirement is unnecessary to guarantee that he would ably serve the clients and courts that would depend on him in Virginia. But surely he suffers no more from the presumptions of Rule 1A:1(4)(d) than did his counterpart in Martin v. Walton, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961). The petitioner in that case lived in Kansas and practiced in Kansas City, Missouri. A Kansas rule required him, as a part-time practitioner, to affiliate with local counsel for his Kansas appearances even though he had passed the Kansas bar examination, had published an article on Kansas procedure, and had served as city attorney for his Kansas town and as a member of the Kansas Board of Tax Appeals. See Martin v. Davis, 187 Kan. 473, 357 P.2d 782 (1960). The Supreme Court dismissed his due process challenge to the Kansas rule for want of a substantial federal question, holding that the full-time practice requirement--both on its face and as applied--was "not beyond the allowable range of state action under the Fourteenth Amendment." Martin v. Walton, 368 U.S. at 25-26, 82 S.Ct. at 1-2. The same deference to state regulation is appropriate here. Our role is not to conduct an individual inquiry into Goldfarb's qualifications; Virginia offers a special hearing on that question through its bar examination. Our role is instead to determine whether Virginia has adopted a rational approach to the serious problem of attorney incompetence. We can only conclude that it has.
 
 III
 
 8
 The existence of a relationship between Rule 1A:1(4)(d) and a legitimate state goal resolves Goldfarb's Due Process Clause challenge. When a permissible purpose for the regulation has been established, we must still address its effect on interstate commerce. In that review, the rule "will be upheld unless the burden on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1969). We hold that Rule 1A:1(4)(d) does not constitute such an undue burden upon interstate commerce.
 
 
 9
 The "putative local benefit" of Rule 1A:1(4)(d), as noted earlier, is that the full-time practice requirement promotes familiarity with Virginia law among attorneys who have not passed the state bar examination. Brown v. Supreme Court of Virginia, 359 F.Supp. at 561-562. This is surely a legitimate state purpose. The Supreme Court has recognized "the traditional authority of state courts to control who may be admitted to practice before them," Leis v. Flynt, 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, 701 n. 5, 58 L.Ed.2d 717 (1979) and "their broad power to establish standards for licensing practitioners and regulating the practice of professions," Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975). At a time when proposals for specialty certification and continuing legal education have emerged to address public concern about lawyer competency, we decline to derogate the importance of Virginia's attempt to ensure that those who practice in its borders have some knowledge of its law.
 
 
 10
 In promoting this interest, Virginia could have required that all lawyers, including Goldfarb, take and pass the bar examination. Goldfarb concedes that this maximum burden lies within the state's power to impose. Virginia, however, has elected to provide the full-time practice option in lieu of an examination for those lawyers who have practiced elsewhere for five years. The state can hardly be penalized for offering a choice between a requirement it can concededly exact and one that many attorneys may find less onerous.
 
 
 11
 Goldfarb alleges that a less comprehensive bar examination, an in-state office, or a brief course in state law are means which would adequately serve the state's purpose while imposing a lesser burden on the flow of interstate commerce. "Less drastic means" analysis may play an important part in Commerce Clause jurisprudence, if the court finds that the means chosen by the state impose a substantial and unacceptable burden. See Dean Milk Co. v. City of Madison, 340 U.S. 349, 354, 71 S.Ct. 295, 297, 95 L.Ed. 329 (1951) ("[the challenged regulation] discriminates against interstate commerce. This it cannot do, even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available"). This does not imply, however, that every regulation imposed pursuant to the state's police power must automatically undergo strict scrutiny of means if plaintiff is able to point to some effect, however indirect, upon interstate commerce. Here the means chosen are, as noted earlier, concededly legitimate. Courts have consistently shown deference to special conditions imposed by states on applications for admission without examination. See, e.g., Lowrie v. Goldenhersh, 716 F.2d 401 (7th Cir.1983); Hawkins v. Moss, 503 F.2d 1171 (4th Cir.1974). To require a hearing to weigh the relative impacts of all the other means the state might have chosen would deal a serious blow to the capacities of the states and localities to further even the most basic regulatory purposes. As the Commerce Clause is implicated by almost every economic regulation, see Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), and its shadow extends equally far, see Philadelphia v. New Jersey, 437 U.S. 617, 621-623, 98 S.Ct. 2531, 2534-2535, 57 L.Ed.2d 475 (1978), such hearings would be an almost constant process.
 
 
 12
 Although Goldfarb challenges the requirement of full-time practice in Virginia as "economic protectionism," it can as readily be viewed as a means of making available reciprocal admissions to the Virginia bar. Eleven states do not permit admission by reciprocity at all.[3] The life of admission by reciprocity has always been a checkered one,[4] and there exists the danger that ruling conditions on reciprocal admissions unconstitutional will chase states into the one certain sanctuary of a bar examination for all. We decline to risk a development that would defeat the values of interstate mobility among providers of professional services that it is our duty under the Commerce Clause to protect. The district court therefore correctly held, on the basis of the pleadings, that the benefits of Rule 1A:1(4)(d) outweigh the burdens in the sense described by Pike v. Bruce Church.[5]
 
 IV
 
 13
 Goldfarb argues that this reasoning mingles two different regulations when each rule must independently satisfy the Constitution. He notes that if the state offers admission without examination, it may not do so, for example, only for applicants of a particular race or religion or political affiliation. Eligibility for admission without examination, if conditioned on those grounds, would presumably have to withstand constitutional challenge on its own legs, not on the borrowed legs of the bar examination. Goldfarb reasons that the burden on interstate commerce of the full-time practice requirement must similarly be assessed in a factual inquiry that does not consider the alternative of the bar examination. According to his reply brief, "one's rights under the Commerce Clause are not different from, or inferior to, rights arising under other provisions of the Constitution for purposes of determining the legality of state regulation."
 
 
 14
 The constitutionality of state programs that condition eligibility on various grounds is an enormously complex congeries of subjects, far too complex to sustain Goldfarb's facile comparison. Here we obviously do not face Goldfarb's hypothetical Rule 1A:1(4)(d) that conditions admission without examination on the basis of race or religion. But even if we accepted Goldfarb's best approach to such questions, we would still hesitate to find in the solutions a principle that would apply in constitutional contexts ranging from some hypothetical Third Amendment case to the instant Commerce Clause case. As Justice Frankfurter once wrote, "One of the most treacherous tendencies in legal reasoning is the transfer of generalizations developed for one set of situations to seemingly analogous, yet essentially very different, situations." Braniff Airways, Inc. v. Nebraska State Board of Equalization, 347 U.S. 590, 603, 74 S.Ct. 757, 765, 98 L.Ed. 967 (1954) (Frankfurter, J., dissenting).
 
 
 15
 The decisive point is that the Commerce Clause is very different from even Goldfarb's most forceful interpretation of his offered parallel, the Equal Protection Clause. The Commerce Clause limits state authority in its grant of federal supremacy. The Equal Protection Clause, on the other hand, explicitly overrides state authority in its guarantee of individual rights. Goldfarb's hypothetical Rule 1A:1(4)(d) would violate his Equal Protection Clause, regardless of the bar examination, because it violates an ineligible applicant's independent right to be treated like the candidates who are eligible under the rule.[6] The Commerce Clause in contrast creates no such personal claims. The relevant issue there is whether Virginia has in Rule 1A:1(4)(d) exceeded the province of its state power by asserting unreasonable control over interstate commerce. And because the availability of the bar examination helps to define the extent of that assertion in a way that it cannot define the independent existence of identical treatment, we include the examination alternative in our Commerce Clause calculus although we ignore it for equal protection purposes. Cf. Shapiro v. Cooke, 552 F.Supp. 581 (N.D.N.Y.1982), aff'd 702 F.2d 46 (2d Cir.1983) ("if a state may constitutionally require all applicants to take the examination, the Commerce Clause is not offended by a rule which permits some, but not all, out-of-state attorneys to be admitted on waiver of the examination.")
 
 V
 
 16
 Finally, we note that Goldfarb's Commerce Clause argument draws little support from recent cases invalidating state residency requirements for bar admission under the Privileges and Immunities Clause. See especially Supreme Court of New Hampshire v. Piper, --- U.S. ----, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). Goldfarb may not rely directly on the decisions because he is a Virginia resident, and the Privileges and Immunities Clause provides "no security for the citizen of the State in which [the privileges] were claimed." The Slaughterhouse Cases, 83 U.S. (16 Wall.) 36, 77, 21 L.Ed. 394 (1873).[7] Therefore, he attempts to rely on analogy to the decisions, alluding to the common history and the common purpose shared by the Commerce Clause and the Privileges and Immunities Clause. See Hicklin v. Orbeck, 437 U.S. 518, 531, 98 S.Ct. 2482, 2490, 57 L.Ed.2d 397 (1978).
 
 
 17
 We, however, see no logical path from the challenged rule in Supreme Court v. Piper, which excluded from New Hampshire practice out-of-state residents who had passed the examination, to the challenged rule here, which would admit Goldfarb to Virginia practice if he but passed the bar. Given the important structural differences between the clauses, see L. Tribe, American Constitutional Law Sec. 6-33, we cannot find such a route of correspondence in vague generalizations about "discrimination against those out-of-state." Several of the concepts involved in Piper are certainly implicated here on varying levels of abstraction, but the angle of connection is far too oblique to provide any leverage for overturning Rule 1A:1(4)(d).
 
 VI
 
 18
 Changing conditions in the American polity consistently deepen two of the most important problems before the legal profession--the need to expand public access to legal services and the need to maintain in those services a quality of representation that is equal to the inherent level of attorney responsibility. Rule 1A:1(4)(d) represents part of an attempt by the Virginia Supreme Court to reconcile and resolve these sometimes conflicting but always pressing professional concerns. Whether a waiver of the bar examination for full-time practitioners is a wise approach to the issue is a matter for the judgment of Virginia. Whether the rule affords due process and respects federal primacy in interstate commerce is a matter for the judgment of the court. Because Rule 1A:1(4)(d) is sound on both grounds, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 As the district court dismissed this suit under Fed.R.Civ.P. 12(b)(6), we accept as true the facts stated in the complaint and all reasonable inferences that favor the plaintiff. Gardner v. Toilet Goods Association, 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967)
 
 
 [2]
 Rule 1A:1 provides:
 Any person who has been admitted to practice law before the court of last resort of any state or territory of the United States or of the District of Columbia may file an application to be admitted to practice law in this Commonwealth without examination, if counsel licensed to practice here may be admitted to practice there without examination.
 The applicant shall:
 (1) File with the clerk of the Supreme Court at Richmond an application, under oath, upon a form furnished by the clerk.
 (2) Furnish a certificate, signed by the presiding judge of the court of last resort of the jurisdiction in which he is entitled to practice law, stating that he has been so licensed for at least five years.
 (3) Furnish a report of the National Conference of Bar Examiners concerning his past practice and record.
 (4) Pay a filing fee of fifty dollars.
 Thereafter, the Supreme Court will determine whether the applicant:
 (a) Is a proper person to practice law.
 (b) Has made such progress in the practice of law that it would be unreasonable to require him to take an examination.
 (c) Has become a permanent resident of the Commonwealth.
 (d) Intends to practice full time as a member of the Virginia bar.
 In the determination of these matters the Supreme Court may call upon the applicant to appear personally before a member of the Court or its executive secretary and furnish such information as may be required.
 If all of the aforementioned matters are determined favorably for the applicant, he shall be notified that some member of the Virginia bar who is qualified to practice before the Supreme Court may make an oral motion in open court for his admission to practice law in this Commonwealth.
 Upon the applicant's admission he shall thereupon in open court take and subscribe to the oaths required of attorneys at law, whereupon he shall become an active member of the Virginia State Bar.
 
 
 [3]
 Hafter, Toward The Multistate Practice of Law Through Admission by Reciprocity, 53 Miss.L.J. 1, 44-47 (1983)
 
 
 [4]
 See generally Hafter, supra n. 3
 
 
 [5]
 Goldfarb argues that this balancing test prescribed by Bruce Church involves close consideration of the facts presented by each case and stresses that a complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). The district court concluded, as do we, that the benefit-burden analysis of Pike v. Bruce Church may be performed in this case without taking discovery or hearing evidence
 
 
 [6]
 While indulging Goldfarb's equal protection concerns with imaginary Rules 1A:1(4)(d) that discriminate on the basis of race or religion, it is perhaps appropriate to note that the real Rule 1A:1(d) does not violate the Equal Protection Clause. Brown v. Supreme Court of Virginia, 359 F.Supp. 549 (E.D.Va.), aff'd mem. 414 U.S. 1034, 94 S.Ct. 534, 38 L.Ed.2d 327 (1973)
 
 
 [7]
 We therefore need not and do not determine the validity of Rule 1A:1(c), which limits admission without examination to Virginia residents, in the face of a constitutional challenge by a nonresident