Anthony G. SCARIANO, Plaintiff,

v.

JUSTICES OF the SUPREME COURT OF
the STATE OF INDIANA; and Members
of the State Board of Law Examiners of
the State of Indiana, Defendants.

No. IP 93–606 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 25, 1994.

Anthony G. Scariano, Scariano Kula Ellch & Himes, Chicago Heights, IL, for plaintiff.

David C. Campbell, Karl L. Mulvaney, Indianapolis, IN, for defendants.

## ENTRY GRANTING MOTION TO DISMISS AND DIRECTING ENTRY OF JUDGMENT

BARKER, Chief Judge.

### Introduction

■ States have a constitutionally permissible and substantial interest in regulating bar admission. *In re Griffiths,* 413 U.S. 717, 723, 93 S.Ct. 2851, 2855–56, 37 L.Ed.2d 910 (1973). The Supreme Court has recognized "the traditional authority of state courts to control who may be admitted to practice before them," *Leis v. Flynt,* 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, 701–02 n. 5, 58 L.Ed.2d 717 (1979) and "their broad power to establish standards for licensing practitioners and regulating the practice of professions," *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975). They may do so, however, only so long as they "have a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

This case pits a challenge to an Indiana rule concerning bar admission against the State's interest in regulating and setting standards for admission. The challenger, Mr. Scariano, cannot prevail in the circumstances presented here and hence his action must be dismissed.

### The Complaint

Anthony Scariano was admitted to practice law in the State of Illinois on April 30, 1975 and has been actively engaged in the practice of law since that time. He has also been admitted to practice before other courts, including the United States Supreme Court. His office is in Chicago Heights, Illinois, only a few miles from the Illinois–Indiana border.

On March 4, 1991 Scariano was conditionally admitted to practice law in Indiana based on his Illinois license. He later sought renewal of his conditional admission. In a letter dated November 10, 1992 the State Board of Law Examiners ("the Board") informed Scariano that his conditional license to practice law in Indiana was not renewed because of his failure to demonstrate that he "practiced predominantly in Indiana during 1991...." (Exhibit B to the Complaint).[1]

Scariano now challenges Rule 6(3) of the *Indiana Supreme Court Rules for Admission to the Bar and the Discipline of Attorneys ("Admission Rules")* and its interpretation by Indiana authorities. He contends that the Rule, on its face and as applied, violates the Equal Protection Clause of the Fourteenth Amendment and the Commerce Clause of Article I of the Constitution. He also blends into each of these arguments the suggestion that Rule 6(3) unreasonably restricts his ability to travel. The action is brought pursuant to 42 U.S.C. § 1983 and jurisdiction is asserted to exist pursuant to 28 U.S.C. §§ 1331 and 1343.

## Discussion

### A. Indiana Admission Rule 6

"In Indiana, the Supreme Court has exclusive jurisdiction to admit attorneys to practice law." *Poats v. Givan,* 651 F.2d 495, 496 (7th Cir.1981), citing Admission Rule 3. The current version of the *Admission Rules* provides that a person may be admitted to practice in the courts of Indiana by taking and passing the Indiana Bar Examination. There is an alternative procedure, established through Rule 6, whereby a person may be conditionally admitted based on his or her license to practice law in another state if he or she meets several requirements.[2] One of these is that the applicant for conditional admission submit "an affidavit of the applicant's intent to engage actively and predominately in the practice of law in Indiana." Admission Rule 6(1)(g). An attorney admitted on this basis may seek renewal of his or her conditional admission each year for up to five (5) consecutive years and will be granted renewal "upon the submission of such verified individualized information as will demonstrate to the satisfaction of the Board that the applicant has during the past year been both (a) actively engaged in the practice of law, and (b) predominately in Indiana." Admission Rule 6(3).

The Board interprets and applies the *Rules.* At the time Scariano was first conditionally admitted to practice law in Indiana, the Board's interpretation of the predominant practice requirement was imprecise, but was represented to the plaintiff as *not* requiring that the applicant/admittee spend more than 50 percent of his or her professional time in Indiana or more than 50 percent of his or her professional time on matters pertaining to Indiana law or pending in Indiana courts. On April 23, 1992 the Board defined two key terms used in Rule 6 in the following manner:

> (i) regularly performing legal services for the general public as a lawyer....
>
> ....
>
> (g) The applicant has filed along with the application an affidavit of the applicant's intent to engage actively and predominately in the practice of law in Indiana.
> (3) Said conditional admission on a foreign license may continue in force for one year, and may be renewed for a like period upon the submission of such verified individualized information as will demonstrate to the satisfaction of the Board that the applicant has during the past year been both (a) actively engaged in the practice of law, and (b) predominately in Indiana.... Upon the fifth consecutive renewal granted to the applicant, the admission to practice shall be permanent.

---

1. Documents attached to the complaint are considered a part thereof. *Fed.R.Civ.P.* 10(c); *Hamilton v. O'Leary,* 976 F.2d 341, 343 (7th Cir. 1992).

2. The version of Rule 6 of these *Rules,* which became effective January 1, 1990 and which is challenged in this case, provides:
   (1) A person who has been admitted to practice law in the highest court of law in any other state ... may be conditionally admitted to practice law in Indiana upon a finding by the State Board of Law Examiners that said person has met each of the following conditions:
   (a) The applicant has actively engaged in the practice of law for a period of at least five (5) of the seven (7) years immediately preceding the date of application. "Engaged in the practice of law" shall mean:

The term "in Indiana" means dealing with Indiana law, representing Indiana clients, or handling cases in Indiana courts, *i.e.,* the applicant must look to the substance of what he or she is doing in the practice that relates to Indiana law courts and clients rather than the physical location of his office.

The term "predominantly" means that the individual's practice in Indiana must exceed, or be equal to, his or her practice in any other jurisdiction.[3]

The Board's adoption and application of these definitions rendered the plaintiff ineligible for the renewal of his conditional license to practice law in Indiana.

### B. Standard of Review

The facts recited in this Entry have been drawn directly from the complaint and are assumed to be true for the purpose of ruling on the defendants' motion. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985) (when ruling on a motion to dismiss, the court will "take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff"). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *Illinois Health Care Ass'n v. Illinois Dept. of Public Health,* 879 F.2d 286, 288 (7th Cir. 1989).

Additional facts, not in the complaint, have been submitted and considered in connection with the Court's Entry of November 10, 1993. However, those materials relate to the issue of subject matter jurisdiction over some or all of the plaintiff's claims and hence have not caused the resolution of that issue to be considered under the standard for summary judgment prescribed in Rule 56(c) of the *Federal Rules of Civil Procedure. Crawford*

*v. United States,* 796 F.2d 924, 928–29 (7th Cir.1986).

### C. Rooker–Feldman

The plaintiff challenges Rule 6(3) "as applied." This means, one must assume, "as applied to him." It appeared in this sense, therefore, that the plaintiff was challenging the ruling of the Indiana Supreme Court on his particular application. A district court has no jurisdiction to review such a ruling, even when dressed up as a civil rights suit. *Ritter v. Ross,* 992 F.2d 750 (7th Cir.1993). To do so would to run headlong into the *Rooker–Feldman* doctrine, which " 'simply forbids federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes such review.' " *Id.,* 992 F.2d at 753, quoting James S. Liebman, *Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity,* 92 Colum.L.Rev.1997, 2008 n. 46 (1992).[4] *See also Guess v. Board of Medical Examiners,* 967 F.2d 998, 1002–03 (4th Cir.1992) (plaintiffs who lose in state court may not "recast their claims in federal court under the guise of federal constitutional claims that were not raised or decided by the state court ... if the constitutional claims are inextricably intertwined with the merits of the state court judgment.").

Neither party initially addressed the relationship or applicability of Admission and Discipline Rule 14(3) in this situation. That Rule provides that a person aggrieved by the final action of the Board through a refusal to recommend the admission of an applicant to practice law in Indiana for any reason other than failure to pass the Bar Examination

> may, within twenty (20) days of receipt of notification setting forth the reason for refusal ... file a petition with the Supreme Court of Indiana requesting review by this

---

3. The Supreme Court used the word "predominately." The Board defined the word "predominantly." Although the two terms are not synonymous, for the purpose of this Entry they are used together to create what is termed "the predominant practice requirement." This is consistent with the usage the parties have given to the two terms.

4. The *Rooker–Feldman* doctrine takes its name from two major Supreme Court cases interpreting 28 U.S.C. § 1257, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Court of such final determination, and setting forth [the basis for the Board's error].

Upon receipt of such a petition the Board sends the matter to the Indiana Supreme Court for a final determination. Based on the availability of this procedure and uncertainty as to whether it had been followed, the Court directed the parties to address whether the *Rooker–Feldman* line would be impermissibly crossed by reaching the merits of the plaintiff's claims.[5] The supplemental materials supplied by the parties show that on November 13, 1992 the plaintiff wrote a letter to the Indiana Supreme Court Administrator which he described as an appeal, pursuant to Rule 14(3), of the revocation (actually the non-renewal) of his Indiana license. He was informed by return letter dated November 24, 1992 that the Supreme Court had considered his appeal and that the appeal "was denied 4–0, with Chief Justice Shepard not participating." The Board's Executive Director then wrote a letter dated January 27, 1993 explaining that the plaintiff needed to direct his appeal to the Indiana Supreme Court and that the Board considered its decision of November 10, 1992 its final action. This letter was somewhat misleading. The defendants have presented the following explanation of their procedure on pages 6–7 of their contentions filed November 29, 1993:

18. In answer to this Court's specific concerns regarding the proceedings before the Supreme Court of Indiana, Defendants state that this case was not formally docketed; that no briefing schedule was established, nor were briefs filed; and that the decision of the Court to deny relief to Mr. Scariano was made at a court conference on November 24, 1992.

19. The Supreme Court of Indiana represents that formal opening of a docket does not always occur under the review provisions of Admission and Discipline Rule 14(3) and that the Court does render decisions based upon the file of the Board of Law Examiners and letters such as submitted by Mr. Scariano. As a matter of further clarification, where the November

24, 1992 letter of Douglas Cressler, Assistant Administrator of the Supreme Court, makes reference to the "Petition" of Mr. Scariano, this refers to the letter of November 13, 1992 submitted by Mr. Scariano.

The decision of November 24, 1992 was thus the end of the road for Scariano insofar as Rule 14(3) was concerned.

■ The two-prong test of *Rooker–Feldman* asks first whether the appeal of the non-renewal of Scariano's Indiana license was a judicial proceeding, and second whether Scariano's claims are so inextricably intertwined with that proceedings as to make review of the claims an impermissible review of a state judicial proceeding. *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589, 597 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993).

"A judicial proceeding ... 'investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.' " *Leaf,* 979 F.2d at 596, quoting *Feldman,* 460 U.S. at 477, 103 S.Ct. at 1312. "A legislative proceeding, however, focuses on the future 'and changes existing conditions by making a new rule to be applied thereafter.' " *Id.* Applying this test it is undeniable that Scariano's Rule 14(3) appeal was judicial in nature. *See Greening v. Moran,* 953 F.2d 301, 305 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 77, 121 L.Ed.2d 42 (1992) (attorney disciplinary proceeding before state supreme court is judicial in nature).

This Court also finds that the second prong of the test is present with respect to Scariano's personal challenge to Rule 6(3) *as applied.* While his claim before the Supreme Court was not elaborate and the decision by that body essentially unexplained, a decision on the application of the predominant practice requirement to him was made and that decision cannot be reviewed here. *See Asarco Inc. v. Kadish,* 490 U.S. 605, 622, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1989) (review by

---

5. This is the sifting of the personal from the general to determine which claims state general, facial attacks on state law and which state claims attacking the specific applications of state law.

*See e.g., Lowrie v. Goldenhersh,* 716 F.2d 401 (7th Cir.1983); *Czura v. Supreme Court of South Carolina,* 632 F.Supp. 267 (D.S.C.1986).

the district court of the Arizona Supreme Court ruling where "[that] action, in essence, would be an attempt to obtain direct review of [a state supreme court's] decision in the lower federal courts ... would represent a partial inroad on *Rooker–Feldman's* construction of 28 U.S.C. § 1257").

The plaintiff disclaims any effort here to obtain the review which we have just demonstrated *Rooker–Feldman* prohibits. Certainly consideration of the specific relief requested will aid in determining what is being challenged and thus whether a district court has subject matter jurisdiction. *Centifanti v. Nix*, 865 F.2d 1422, 1429 (3rd Cir.1989) (citing *Stern v. Nix*, 840 F.2d 208 (3d Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988)). However, the complaint alleges that the plaintiff suffered economic damage as the result of the defendants' decision. He challenges the Rule and definitions pertaining to it "as applied." Even though he does not seek an injunction compelling the defendants to issue the conditional license which they denied after adopting the definition of "predominantly" practicing in Indiana, these allegations are sufficiently specific to draw into question the validity of the decision made by them and made final on November 24, 1992.

Therefore, as in *Leaf*, the Court concludes that to the extent the complaint is or can be construed as a challenge to the November 24, 1992 denial of the plaintiff's request for renewal of his conditional license to practice law in Indiana the action must be **dismissed for lack of subject matter jurisdiction.**

The Court finds the situation otherwise, however, as to the plaintiff's general constitutional challenge to Rule 6(3) and the predominant practice requirement because federal district courts "have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1317. *See also Schumacher v. Nix*, 965 F.2d 1262, 1266 n. 6 (3rd Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1252, 122 L.Ed.2d 651 (1993). The Court therefore proceeds to discuss each of the plaintiff's challenges to Rule 6(3) and the predominant practice requirement.

### D. Equal Protection

The *Admission Rules* are an exercise of the Indiana Supreme Court's rule-making authority and hence treated as legislation for equal protection purposes. *E.g., Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1062 n. 5 (6th Cir.1984), *cert. denied*, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). The first order of business here, therefore, is to identify the correct standard of scrutiny to which the *Admission Rules* are subject.

"As a general matter, economic and social legislation is subject to rational basis review, under which a law need only be 'rationally related to a legitimate state interest.'" *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir.1992) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam) (footnote omitted)). Scariano argues that a higher standard is applicable, but his arguments in this respect are unpersuasive. The right to practice law without taking a bar examination is not a fundamental right for equal protection purposes. *Lowrie v. Goldenhersh*, 716 F.2d 401, 412 (7th Cir. 1983). Further, the "Constitution does not require that because a lawyer has been admitted to the bar of one State, he or she must be allowed to practice in another." *Leis v. Flynt*, 439 U.S. 438, 443, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1979).

In *Lowrie*, the Seventh Circuit concluded that the rational basis test was the proper standard to be applied to the challenge to an Illinois bar admission rule. *Lowrie* represents the great weight of authority which applies only the rational basis test to state bar admission requirements or restrictions. *Schumacher v. Nix*, 965 F.2d at 1268 (citing cases).

In *Goldfarb v. Supreme Court of Virginia*, 766 F.2d 859, 862 (4th Cir.1985), *cert. denied*, 474 U.S. 1086, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986), the plaintiff challenged the constitutionality of Virginia Bar Admission Rule 1A:1(d). Rule 1A:1(d) required that an applicant for admission to the Virginia bar "[i]ntend[] to practice full-time as a member of

the Virginia bar." Both the district court and the Fourth Circuit rejected the challenges to this rule.

*Goldfarb* explained that the full-time practice requirement had already challenged. "[A] three-judge federal panel upheld the rule ... finding that the [full-time practice] requirement rationally served the interest of Virginia in insuring the competence of attorneys practicing in the Commonwealth." *Goldfarb*, 766 F.2d at 862, citing *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549, 561–62 (E.D.Va.), *aff'd mem.*, 414 U.S. 1034, 94 S.Ct. 533, 534, 38 L.Ed.2d 327 (1973). The summary affirmance by the Supreme Court "authoritatively [established] ... that a rational basis lay beneath Rule 1A:1(d)...." *Id.*

The similarities between this case and *Goldfarb* are striking. *Goldfarb* speaks directly to the challenge which Scariano makes here by addressing "directly ... the attorneys' amount of practice in other states."[6] The reason for the full-time practice requirement, moreover, was obviously to ensure familiarity with state law for those attorneys desiring to practice without passing the bar examination. This was "surely a legitimate state purpose." *Goldfarb*, 766 F.2d at 862.

Although the plaintiff may point to his case as an example of the Rule resulting in inequality in some fashion, incidental individual inequality does not make such rules offensive to the Fourteenth Amendment. *Martin v. Walton*, 368 U.S. 25, 26, 82 S.Ct. 1, 2, 7 L.Ed.2d 5 (1961). Indiana has not required that a bar applicant (under Rule 6(3) or otherwise) become a resident or even maintain an office in this State. Also, the wisdom or efficacy of the predominant practice requirement is a subject beyond judicial fiat. As stated in *Lowrie*, "[u]nder the mere rationality level of review, it is of no moment that the rule is not the least restrictive means to a permissible end, and ... may not

be the best way to ensure character and fitness." *Lowrie*, 716 F.2d at 409. This point was also made in *Goldfarb:*

> We recognize that Goldfarb's experience and familiarity with state law may be such that the full-time practice requirement is unnecessary to guarantee that he would ably serve the clients and courts that would depend on him in Virginia. But surely he suffers no more from the presumptions of Rule 1A:1(d) than he did his counterpart in *Martin v. Walton*, 368 U.S. 25, 7 L.Ed.2d 5, 82 S.Ct. 1 (1961). The petitioner in that case lived in Kansas and practiced in Kansas City, Missouri. A Kansas rule required him, as a part-time practitioner, to affiliate with local counsel for his Kansas appearances even though he had passed the Kansas bar examination, had published an article on Kansas procedure, and had served as city attorney for his Kansas town and as a member of the Kansas Board of Tax Appeals. *See Martin v. Davis*, 187 Kan. 473, 357 P.2d 782 (1960). The Supreme Court dismissed his due process challenge to the Kansas rule for want of a substantial federal question, holding that the full-time practice requirement—both on its face and as applied—was "not beyond the allowable range of state action under the Fourteenth Amendment." *Martin v. Walton*, 368 U.S. at 25–26, 82 S.Ct. at 2. The same deference to state regulation is appropriate here. Our role is not to conduce an individual inquiry into Goldfarb's qualifications; Virginia offers a special hearing on that question through its bar examination. Our role is instead to determine whether Virginia has adopted a rational approach to the serious problem of attorney incompetence. We can only conclude that it has.

766 F.2d at 862. Therefore, Rule 6 is not violative of the Equal Protection Clause merely because there may be a better, more

---

6. It would appear that the full-time practice of law in Virginia leaves no opportunity to practice elsewhere. However, the Virginia Supreme Court interprets the full-time practice requirement of Rule 1A:1(d) to mean that an applicant must show that he intends to open an office in Virginia for the practice of law and to engage regularly in the practice of law in Virginia. *In*

*Re Brown*, 213 Va. 282, 191 S.E.2d 812, 815 n. 3 (1972). Ironically, however, it was noted in a later case that "Virginia has established no enforcement machinery to monitor compliance with its full-time practice requirement." *Friedman v. Supreme Court of Virginia*, 822 F.2d 423, 429 (4th Cir.1987).

direct way of ensuring the competence of attorneys who apply for admission under the rule or because the rule may work an unfair hardship in a particular case. *See Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 476 (7th Cir.1974). Indiana's predominant practice requirement forces familiarity with Indiana law. This fosters the State's legitimate interest in regulating and maintaining the quality of those persons admitted to practice law and this rationale is sufficient to show that the challenged rule does not violate the Equal Protection Clause. *See Sestric v. Clark,* 765 F.2d 655, 663 (7th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986).

When applying the rational basis test a court is free to uphold a classification based upon "a[ny] state of facts that reasonably can be conceived to constitute a distinction or difference in State policy...." *Allied Stores v. Bowers,* 358 U.S. 522, 530, 79 S.Ct. 437, 443, 3 L.Ed.2d 480 (1959). Those facts are more than evident from the face of Rule 6(3). On the basis of the foregoing, therefore, the Court cannot conclude that Admission Rule 6 is not rationally related to a legitimate state interest. It thus survives the plaintiff's equal protection challenge.

### E. Right to Travel

■ Although not asserted as a separate count in the complaint, Scariano asserts that the "predominant practice requirement ... burdens the right to travel protected by the Constitution...." (Paragraph 26). The right of citizens to be free from unreasonable restrictions on their ability to travel interstate is drawn from Article IV, Section 2, of the Constitution and Section I of the Fourteenth Amendment. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The practice of law, however, is not a fundamental right or activity. *Leis v. Flynt,* 439 U.S. 438, 444, 99 S.Ct. 698, 701–02, 58 L.Ed.2d 717 (1979).

■ A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right. *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 903, 106 S.Ct. 2317, 2321, 90 L.Ed.2d 899 (1986). Although Scariano would have this Court believe that the predominant practice rule directly restricts the multi-state practice of law and is therefore an impediment to his right to travel, this is not a conclusion with which the Court agrees. As explained in *Lowrie,* 716 F.2d at 412, "[r]equiring Lowrie to sit for and pass the bar examination does not amount to a denial of a basic necessity of life ... nor does it infringe on a fundamental right." The Court does not find that the right to travel has been implicated as a result of Rule 6. Even if implicated, there is no allegation that impeding travel is the primary objective of Rule 6, nor is there an allegation that Rule 6 uses any classification which serves to penalize the exercise of Scariano's right to travel. Simply stated, Admission Rule 6 provides attorneys such as the plaintiff with an alternative to sitting for the Indiana Bar Examination. If that alternative is not appealing to him, he may pursue the other route: sit for the Indiana Bar Examination. The requirements of Admission Rule 6 do not violate the right to travel.

### F. Interstate Commerce Clause

■ The plaintiff claims that the predominant practice requirement unreasonably burdens interstate commerce. Article I, Section 8 of the Constitution grants Congress the power to regulate commerce among the states. When a state law directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the law is generally to be invalidated. *Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986). A pertinent test was announced in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), where the Supreme Court indicated that a statute will be upheld where effects on interstate commerce are incidental "unless the burden on such commerce is clearly excessive in relation to the putative local benefits."

As with most bar admission requirements in most jurisdictions, the "putative local benefit" of Rule 6(3) is that persons admitted to

practice law in Indiana without having first taken its bar examination are nonetheless familiar with Indiana law. This is an important state interest and it does not appear that the plaintiff could demonstrate that the burden on commerce is "clearly excessive" in relation to that purpose.

Scariano also concedes that if all attorneys were required to pass the bar examination, the effect on interstate commerce would only be indirect. Goldfarb made a similar concession. Such a concession dooms this argument to failure. "If a state may constitutionally require all applicants to take the examination, the Commerce Clause is not offended by a rule which permits some, but not all, out-of-state attorneys to be admitted on waiver of the examination." *Shapiro v. Cooke*, 552 F.Supp. 581 (N.D.N.Y.1982), *aff'd.*, 702 F.2d 46 (2d Cir.1983). *See also Attwell v. Nichols*, 466 F.Supp. 206 (N.D.Ga. 1979), *aff'd*, 608 F.2d 228 (5th Cir.1979), *reh'g denied*, 612 F.2d 579 (5th Cir.1980).

Scariano makes the untenable assertion that the rule in *Goldfarb* "did not speak directly to the attorneys' amount of practice in other states and was viewed only as a requirement of a minimum level of practice in Virginia." (Plaintiff's Memorandum in Opposition to Motion to Dismiss, page 21). The reason the Court finds this contention untenable bears further discussion.

Even treating Virginia's full-time practice rule as only a requirement of a minimum level of practice in Virginia, it is incongruous for him to also argue that Indiana's less onerous predominant practice requirement "directly, significantly, unjustifiably, and unreasonably interferes with interstate commerce." (Complaint, paragraph 30). "The state can hardly be penalized for offering a choice between a requirement it can concededly exact and one that many attorneys may find less onerous." *Goldfarb*, 766 F.2d at 863.

### Conclusion

States have the authority to cause individuals desiring to practice law to meet certain minimum requirements as a means of ensuring that those who practice law in a given state are competent to do so. "The reason why preparatory study, educational qualifica-

tions, experience, examination and license by the courts are required, is not to protect the bar ... but to protect the public." *People v. Alfani*, 227 N.Y. 334, 125 N.E. 671, 673 (1919). *See also Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396 (7th Cir.1993) (reaffirming that "the regulation of the activities of the bar is at the core of the State's power to protect the public.... Few other professions are as close to the core of the State's power to protect the public. Nor is any trade or other profession as essential to the primary governmental function of administering justice." (quoting *Hoover v. Ronwin*, 466 U.S. 558, 569 n. 18, 104 S.Ct. 1989, 1995–96 n. 18, 80 L.Ed.2d 590 (1984)).

Although the requirements for conditional bar admission in Indiana under Admission Rule 6(3) may have certain indirect consequences, these do not rise to the level of an Equal Protection violation, a violation of the Interstate Commerce Clause or a violation of the Right to Travel. Accordingly, the Court finds that the defendants' motion to dismiss must be granted and the complaint dismissed for failure to state a claim upon which relief can be granted. Finding no possible amendment which would salvage the plaintiff's claims, the Court also directs the entry of judgment dismissing the cause of action with prejudice. However, to the extent that the complaint can be construed to challenge the Indiana Supreme Court's actual decision in Scariano's case, this action must be dismissed for lack of subject matter jurisdiction.

### ALL OF WHICH IS ORDERED.

### JUDGMENT

The Court, having this day made its Entry,

IT IS NOW THEREFORE ADJUDGED AND DECREED that the plaintiff take nothing by his complaint in this case and this cause of action is DISMISSED WITH PREJUDICE except that the action is DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION as to any claim which the complaint can be construed to assert as a challenge to the Indiana Supreme Court's actual decision of November 24, 1992 denying the plaintiff's request for the renewal of his

conditional license to practice law in the State of Indiana.