**Anthony G. SCARIANO,**
**Plaintiff–Appellant,**

v.

**JUSTICES OF the SUPREME COURT OF the STATE OF INDIANA and Members of the State Board of Law Examiners of the State of Indiana, Defendants–Appellees.**

No. 94–1783.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 1994.

Decided Oct. 26, 1994.

John M. Izzo (argued), Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for plaintiff-appellant.

David C. Campbell (argued), Karl L. Mulvaney, Sharon L. Groeger, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, for defendants-appellees.

Before CUMMINGS, BAUER and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

The Supreme Court of Indiana exempts out-of-state practitioners from the bar examination only if they practice "predominately" in Indiana for a period of five years. Anthony G. Scariano, an attorney practicing in Illinois, asserts that this rule violates the Equal Protection Clause of the Fourteenth Amendment and the Commerce Clause of Article I of the Constitution. The district court dismissed Scariano's complaint for failure to state a claim upon which relief could be granted. 852 F.Supp. 708. Chief Judge Barker held that the indirect consequences of Indiana's rule did not rise to the level of an Equal Protection Clause violation or a violation of the Commerce Clause.[1] We affirm.

I.

Anthony G. Scariano has practiced law in Illinois since 1975. He maintains an office and an active practice in Chicago Heights, Illinois, only a few miles from the Illinois–Indiana border.

In 1990, Scariano applied for admission to the Indiana Bar under that state's foreign license provision, Rule 6 of the Indiana Rules for Admission to the Bar and the Discipline of Attorneys (Rules).[2] An applicant can gain

---

1. In the lower court, Scariano also asserted a right to travel claim and challenged the rule as applied. Because he does not challenge the district court's rulings on these issues on appeal, we will not discuss them.

2. The relevant text of Rule 6 provides:

(1) A person who has been admitted to practice law in the highest court of law in any other state ... may be conditionally admitted to practice law in Indiana upon a finding by the State Board of Law Examiners that said person has met each of the following conditions:

conditional admission to the Indiana Bar under this provision by submitting an affidavit of intent to engage in practice predominantly in Indiana. Scariano obtained a conditional license on March 4, 1991.

Renewal of this conditional admission depends upon the applicant's ability to demonstrate an active practice, predominantly in Indiana, on a yearly basis. If the applicant succeeds in demonstrating such an active practice for a period of five years, he or she is admitted to the Indiana Bar.

Indiana's Board of Law Examiners interprets and applies Indiana's Rules. That body recently interpreted the "predominant practice requirement" of Rule 6(3).[3] The Board stated that:

> The term "in Indiana" means dealing with Indiana law, representing Indiana clients, or handling cases in Indiana courts, i.e., the applicant must look to the substance of what he or she is doing in the practice that relates to Indiana law, courts and clients rather than the physical location of his office.
>
> The term "predominantly" means that the individual's practice in Indiana must exceed, or be equal to, his or her practice in any other jurisdiction.

The application of this requirement prevented Scariano from renewing his conditional license to practice law in Indiana. Because he had a substantial practice in Illinois, it was impossible for him to provide proof of an Indiana practice that exceeded or equaled that of Illinois.

Scariano now attempts to challenge the predominant practice requirement. Although Indiana's Rules provide him the alternative means of gaining admission through bar examination, he undertakes an attack on Indiana's foreign practice provision, Rule 6. He characterizes Indiana's demand that he take the bar examination—when others with out-of-state practices are exempt—as an unreasonable burden. The district court found otherwise. We affirm.

## II.

State courts have traditional authority to control bar admission. *Leis v. Flynt*, 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, 701 n. 5, 58 L.Ed.2d 717 (1979). A state can therefore require observance of high standards, such as proficiency in the law, before admitting an applicant to the bar. *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). A state's discretion is not, however, unfettered. State bar admission requirements must have a rational connection with an applicant's legal ability, and they must fulfill other constitutional mandates. *Id. See also Poats v. Givan*, 651 F.2d 495 (7th Cir.1981) (upholding Indiana's exclusion of applicants who had previously failed the bar examination four times).

The Admission Rules are an exercise of the Indiana Supreme Court's rule-making authority. For the purposes of constitutional inquiry, courts treat the Rules as legislation. *See, e.g., Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1062 n. 5 (6th Cir.1984), *cert. denied*, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). Analysis of Indiana's Rule 6 must therefore proceed under equal protection and commerce clause

---

(a) The applicant has actively engaged in the practice of law for a period of at least five (5) of the seven (7) years immediately preceding the date of the application. "Engaged in the practice of law" shall mean:

    (i) regularly performing legal services for the general public as a lawyer....

    ....

(g) The applicant has filed along with the application an affidavit of the applicant's intent to engage actively and predominately in the practice of law in Indiana.

(3) Said conditional admission on a foreign license may continue in force for one year, and may be renewed for a like period upon the submission of such verified individualized information as will demonstrate to the satisfaction of the Board that the applicant has during the past year been both (a) actively engaged in the practice of law, and (b) predominately in Indiana.... Upon the fifth consecutive renewal granted to the applicant, the admission to practice shall be permanent.

3. The Rules use the word "predominately." The Board, however, defined the term "predominantly." The district court adopted the term "predominant practice requirement" to refer to both words used by the State of Indiana. We do likewise on appeal.

standards. Our review of such matters is *de novo. Harris Trust & Savings Bank v. E–II Holdings, Inc.*, 926 F.2d 636, 641 n. 17 (7th Cir.1991).

### III.

Scariano first asserts that Rule 6 violates the Equal Protection Clause. The predominant practice requirement, he claims, draws an arbitrary distinction between classes of out-of-state practitioners by focusing on the relative sizes of their out-of-state practices.[4] Because a state need not tailor classifications perfectly when fundamental rights are not implicated, we cannot accept Scariano's equal protection challenge.

The first step in equal protection analysis is to determine the standard of scrutiny to which Indiana's Rules are subject. The right to practice law without taking a bar examination is not a fundamental right for equal protection purposes. *Lowrie v. Goldenhersh*, 716 F.2d 401, 412 (7th Cir. 1983). Given the absence of both a fundamental right and a suspect class, rational basis review applies. *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir.1992). Other courts considering equal protection challenges to state bar rules have consistently applied rational basis review. *Id.* at 1268 (citing cases). Therefore, we will assess the validity of Rule 6 under rationality review.

Under the rational basis test, a law is entitled to a presumption of validity. *Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979). A court will not disturb the law as long as it is rationally related to a legitimate government interest. *Schumacher*, 965 F.2d at 1269. Therefore, Indiana need make only two showings. First, the State must point to a legitimate state interest. Second, it must demonstrate Rule 6's rational relation to that interest.

States unquestionably have a legitimate interest in insuring the competence of attorneys practicing within their borders.

*Sestric v. Clark*, 765 F.2d 655, 663 (7th Cir. 1985); *Lowrie*, 716 F.2d at 408. Given the information barriers that many clients face in choosing attorneys, a state's desire to regulate the profession is understandable. *Sestric*, 765 F.2d at 663 (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977)). For these reasons, courts treat state efforts to preserve professional integrity with deference. *Schumacher*, 965 F.2d at 1269.

The district court found that Rule 6 purports to serve two interests. First, Rule 6 is designed to "force familiarity with Indiana law." Second, the rule seeks to maintain "the quality of those persons admitted to practice law." We have previously identified these interests as legitimate; Scariano does not derogate their importance.

Instead, Scariano attacks Rule 6(3)'s claimed rationality. The requirement that an attorney licensed out-of-state practice predominantly in Indiana (that is, more than the attorney practices in other states) is not, he asserts, rational. The comparison between practice in Indiana and practice elsewhere is purportedly not probative of an attorney's familiarity with Indiana law. Instead, the State should require a fixed quantum of experience with Indiana law. By requiring a given measure of experience in Indiana law, Indiana can avoid a disparity in knowledge among out-of-state practitioners gaining admission.

The claimed flaw in the required *comparative* assessment arises from the possible admission of an attorney only marginally familiar with Indiana law. This might occur, it is claimed, because such an attorney might have a relatively small out-of-state practice. An attorney more experienced in Indiana law, on the other hand, might be denied admission due to a larger out-of-state practice (as apparently happened with Scariano himself). The present rule thus fails to guard against inequalities in admission. Attorneys less well-versed in Indiana's particularities might gain admission while those

---

4. We use the term "out-of-state practitioners" throughout this opinion to refer to attorneys licensed to practice law in states other than Indiana. The term has nothing to do with an attorney's residence; nor does the term suggest that an attorney has not yet practiced in Indiana on a conditional basis.

knowing more about Indiana law might be required to take the bar examination. Although these may indeed be dangers, they do not signal the demise of Rule 6 under rational basis review.

▮▮▮▮▮ Rationality does not require that a rule be the least restrictive means of achieving a permissible end. *Lowrie,* 716 F.2d at 401; *Schumacher,* 965 F.2d at 1273. The general wisdom of Indiana's approach is not a matter for this Court's scrutiny. A given bar admission rule need not be the most effective means of regulating bar admission. *Lowrie,* 716 F.2d at 401. Scariano's complaints about the required comparative assessment are thus wide of the constitutional mark.[5] Nor is it relevant that some unfairness results from the application of the rule. *Schumacher,* 965 F.2d at 1273. Scariano may in fact be more qualified than others (with smaller out-of-state practices) who have gained admission under the predominant practice requirement. This circumstance, however, is not dispositive. Under rational basis review, some slippage is permissible.

Scariano, however, insists. He suggests that we can find irrationality if we confine our focus to the predominant practice requirement and ignore the rest of Rule 6. We cannot accept Scariano's suggestion. To do so would import least restrictive means analysis into rationality review by artificially analyzing Rule 6's various components.

This approach is unnecessarily narrow. Under it, we would have to focus on licensed attorneys with large out-of-state practices to find unfairness. Rule 6's scope is, however, broader. The rule applies to *all* out-of-state practitioners seeking admission without bar passage. In many applications, the rule will work as intended: out-of-state practitioners seeking admission will become adequately familiar with Indiana law before being admitted to the state bar. If the largest portion of an attorney's practice is in one state, that attorney has a strong incentive to master the law of that state. *Sestric,* 765 F.2d at 661. Such will be the case, more often than not, in

Indiana. We cannot ignore this result in favor of a narrow approach that focuses only on the possible inequities of the predominant practice requirement. Courts evaluating bar rules may not proceed by such narrow inquiries. *See Schumacher,* 965 F.2d at 1272 (refusing to focus on the irrational instance of a reciprocity rule as applied to graduates of unaccredited law schools and focusing instead on the rule's application to all graduates).

As we have suggested, a different approach would import a least restrictive means analysis into rational basis review. Scariano is essentially arguing that Rule 6 could accomplish its goal of familiarity more effectively—by eliminating the predominant practice requirement's comparative assessment. Indiana, however, fashioned a rule that substitutes practical experience for the academic showing required by the bar exam. As noted by the district court, this rule accomplishes its goal of familiarity with state law. Taking Rule 6 apart for piecemeal assessment avoids the very point of a rational basis inquiry. Scrutinizing the various components of a given rule is tantamount to demanding universal effectiveness or mathematical exactitude. This heightened approach is impermissible.

Indiana identified a legitimate state interest in its desire to regulate bar admission. Rule 6 provides a rational mechanism for attaining that goal. In light of the deference accorded under rational basis review, we cannot say that Rule 6 violates the Equal Protection Clause.

## IV.

▮▮▮ Scariano also asserts a Commerce Clause challenge. He claims that the predominant practice requirement discriminates against interstate commerce. By tying bar admission to varying levels of a practitioner's out-of-state practice, Indiana allegedly manipulates the amount of that out-of-state practice. Because we believe any discriminatory effects are mitigated by offering the bar

---

**5.** Scariano also complains of a related matter: The Indiana practice requirement is satisfied simply by the representation of Indiana clients— a matter plausibly having little to do with an

attorney's familiarity with Indiana law. This matter, like the comparative assessment complaint, is little more than circumspection inappropriate for rational basis review.

exam as an alternative means of admission, we find that Rule 6 does not offend the Commerce Clause.

Two tests govern the validity of state law under the dormant Commerce Clause. *Government Suppliers Consolidating Services, Inc. v. Bayh,* 975 F.2d 1267, 1276 (7th Cir.1992). One test applies when the state regulation is facially neutral and has only an indirect effect on out-of-state commerce. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Under the *Pike* test, a state regulation will be upheld unless the burden imposed is "clearly excessive in relation to the putative local benefits." 397 U.S. at 142, 90 S.Ct. at 847. A second test applies when the state regulation is discriminatory, either facially or in practical effect. *Brown–Forman Distillers Corp. v. New York Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986); *Government Suppliers,* 975 F.2d at 1277. The second test requires that the discrimination be justified by reasons unrelated to economic protectionism. *Government Suppliers,* 975 F.2d at 1277. Application of the second "test" almost invariably results in a state statute's invalidation. *Brown–Forman,* 476 U.S. at 579, 106 S.Ct. at 2084.

Given that the two tests produce such disparate results, a great deal turns on the determination of which test is to apply. This, naturally, the parties dispute. Both the district court and Indiana's Board believe the rule should be upheld under the *Pike* balancing test. Scariano, on the other hand, maintains that Rule 6 overtly discriminates.

Rule 6's predominant practice requirement insists that a practitioner's in-state practice be greater than his out-of-state practice to gain admission to Indiana's Bar; otherwise, the out-of-state practitioner must sit for the bar exam. Scariano believes that this ar-

rangement invariably results in a limitation on an attorney's out-of-state practice: would-be Indiana attorneys will give up lucrative multistate practices rather than take the bar exam. Such, in Scariano's view, is the very essence of the extraterritorial reach condemned in *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 336, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989). Further, the predominant practice requirement allegedly fails to regulate evenhandedly: given the class of out-of-state practitioners, those with substantial multistate practices are made to take the bar exam while those practicing predominantly in Indiana waive in, freed from exam headaches. Such disparate treatment allegedly imposes an unreasonable burden on some out-of-state practitioners.

Scariano's claims have some appeal. Only by diminishing an out-of-state practice can an attorney take advantage of Indiana's predominant practice requirement. Rule 6 thus plausibly threatens reverberations beyond Indiana's borders. The rule also clearly imposes differential burdens on attorneys practicing more out of state than in state: only the out-of-state group is asked to take the bar exam. None of the cases relied upon by the Indiana Board analyze an admission rule that requires a similar comparative assessment or accords different treatment based on the level of out-of-state practice.[6] These arguments thus might seem compelling under the Commerce Clause. *See, e.g., K–S Pharmacies, Inc. v. American Home Products Corp.,* 962 F.2d 728, 730 (7th Cir.1992) (noting that "[a]ny statute of the form 'charge in this state the same price you charge outside of it' carries the implied command: 'Charge outside this state the same price you charge inside it' ").

The existence of an alternative means of bar admission is fatal to Scariano's claim, however. Scariano can obtain what he

---

**6.** Although the Fourth Circuit upheld a similar rule in *Goldfarb v. Supreme Court of Virginia,* 766 F.2d 859 (4th Cir.1985), Virginia's requirements are less stringent and the rule is not apparently enforced. The Virginia rule grants admission without examination to applicants who intend "to practice full-time" in Virginia. 766 F.2d at 860–61. This rule, however, is interpreted to require only that an applicant open a law office

in Virginia and engage regularly in practice there. *In re Brown,* 213 Va. 282, 191 S.E.2d 812, 815 n. 3 (1972). Further, Virginia has no enforcement mechanism to monitor compliance with the full-time practice requirement. *Friedman v. Supreme Court of Virginia,* 822 F.2d 423, 429 (4th Cir.1987), *aff'd,* 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988).

wants—in addition to maintaining his lucrative out-of-state practice—simply by sitting for the bar examination. Viewed against the backdrop of a requirement that the great mass of practicing attorneys are obliged to suffer, his allegations of discrimination and extraterritorial effect lose force. The claimed extraterritorial effects disappear any time an out-of-state practitioner chooses to gain admission by sitting for the bar exam. The requirement that an applicant sit for the bar exam can hardly be deemed discriminatory when the vast majority of Indiana attorneys have taken that exam. In the past, this Court has found the exam alternative significant under the Commerce Clause. *See Sestric,* 765 F.2d at 658–62. That factor is still relevant here.[7]

Rule 6's alleged extraterritorial effects are hardly certain. One might guess that attorneys with lucrative out-of-state practices will give up those practices rather than sit for Indiana's bar exam. But this is pure speculation. We have previously refused to attach significance to speculative claims of what *might* happen under a given bar admission rule. In *Sestric,* we noted that it was "a matter of conjecture whether the requirement of taking and passing a bar exam would actually exclude many lawyers having a serious desire" to practice in a given state. 765 F.2d at 659. The same considerations are dispositive here.

It is not entirely clear that the specter of the bar exam is sufficient to frighten an attorney away from a financially satisfying out-of-state practice. More likely than not, Indiana adopted the provision with a view to convenience. Those out-of-state practitioners contemplating relocation to Indiana (for whatever reason) now have a mechanism to ease their transition to that State. Claims

that Indiana intended to induce attorneys into giving up multistate practices in favor of setting up shop within the state are without merit given the alternative of the bar exam. *See Lowrie,* 716 F.2d at 414. At most, Rule 6 might have some effect at the margin: those attorneys who, after a year under conditional admission, have Indiana practices approaching the size of practices out of state *might* be influenced by the promise of avoiding the bar exam. But this effect—if any—is *de minimis.*

Allegations of discrimination also fail in the face of a universal bar exam requirement. Indiana abides by the default rule that those wishing to practice within its borders must pass its bar exam. The State makes an exception to this universal rule for out-of-state practitioners whose practices shift predominantly to Indiana. Essentially, Indiana has decided to confer a "benefit" on this particular group of out-of-state practitioners. That State also decided, however, to exclude Scariano from the group receiving the benefit. Scariano claims that the decision to make him sit for the bar exam imposes a "burden" upon him. Yet the only way to imagine a "burden" is by ignoring the vast remainder of Indiana's attorneys; they must suffer this bar exam as well.

Indiana does treat Scariano *differently* from the group of out-of-state practitioners happening to have a predominant Indiana practice. Whether we characterize this treatment as a "benefit" to those out-of-state practitioners or a "burden" on Scariano is immaterial. Because Indiana accords Scariano treatment *equal* to that which it accords to the vast majority of attorneys wishing to practice within its borders, no discrimination can be said to exist.[8] *See Government Sup-*

---

7. Scariano suggests that *Sestric* is of dubious weight after the Supreme Court's ruling in *Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988). In *Friedman,* the Supreme Court invalidated a residency requirement parallel to that upheld in *Sestric.* We do not, however, rely on *Sestric's* commentary about the validity *vel non* of residency requirements. The present case has nothing to do with state residency; it instead involves a practice requirement—something that has a much more tenable connection to familiarity with a state's law (and poses no threat to the Privileges

and Immunities Clause). We look to *Sestric* to determine the import of an alternative means of bar admission under Commerce Clause analysis. The Supreme Court did not tackle this particular issue in *Friedman.*

8. Scariano might still complain about being asked to take two bar exams—one more than the average practitioner who stays in his home state. This claim is invalid for the reason that Scariano, unlike the average stay-at-home practitioner, wishes to practice in two states. "It is not obvi-

*pliers,* 975 F.2d at 1279 (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 351, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977)) ("Discrimination may take the form of 'raising the costs of doing business' for out-of-state entities, 'while leaving those of their in-state counterparts unaffected.'").

■ Notice that we do not suggest that Indiana has carte blanche to regulate merely because it could require the bar exam from everyone if it chose. Courts have found such reasoning persuasive in the past. *See, e.g., Shapiro v. Cooke,* 552 F.Supp. 581, 588 (N.D.N.Y.1982). There is also some authority suggesting that reasoning like this is unobjectionable in the context of the Commerce Clause despite being problematic in other constitutional frameworks. *Goldfarb v. Supreme Court of Virginia,* 766 F.2d 859, 864 (4th Cir.1985) (distinguishing the Commerce Clause from the Equal Protection Clause and "includ[ing] the examination alternative in our Commerce Clause calculus although ignor[ing] it for equal protection purposes"). Our brush strokes are not quite so broad. We hold only that claims of discrimination and extraterritorial effect must be assessed in light of the circumstances from which they arise. This formulation is not foreign to Commerce Clause analysis, where "the critical consideration is the overall effect of the statute...." *Brown–Forman,* 476 U.S. at 579, 106 S.Ct. at 2084.

We cannot analyze the predominant practice requirement in a vacuum. The claimed extraterritorial effect is neither certain nor probable in the instant case. The cases upon which Scariano relies, however, all deal with statutes having a profound and inevitable effect. *Brown–Forman,* 476 U.S. at 580, 106 S.Ct. at 2084, and *Healy,* 491 U.S. at 337–39, 109 S.Ct. at 2499–2501, both struck down liquor price affirmation statutes requiring sellers to affirm that prices within the state were no higher than prices outside it. The operation of the statutes could not be avoided if one wanted to sell liquor within the respective states; an extraterritorial impact was thus inevitable. Similarly, in *Government Suppliers,* 975 F.2d at 1279, a backhaul ban

on municipal waste invariably increased the cost of importing that waste; refraining from backhauling was the only means of avoiding this increased cost.

The present case is distinguishable. The existence of the exam alternative renders the alleged extraterritorial reach of the predominant practice requirement speculative at best. Requiring an out-of-state practitioner to take the bar exam most assuredly imposes a cost on that practitioner; but it is a cost borne by the majority of Indiana lawyers. The fact that nearly everyone—particularly state residents with a political voice—labors under the same yoke negates any claims of discrimination.

Because we find that Indiana's Rule 6 has only an incidental effect on interstate commerce, *Pike's* balancing test applies. *Hass v. Oregon State Bar,* 883 F.2d 1453, 1462 (9th Cir.1989). Rule 6 thus survives unless Scariano can demonstrate that the "burden is clearly excessive in relation to the putative local benefits" of the rule. *Pike,* 397 U.S. at 142, 90 S.Ct. at 847. We have previously noted the legitimacy of the state's interest in regulating the legal profession. *Sestric,* 765 F.2d at 664. The strength of that interest hardly changes for the purposes of Commerce Clause analysis. *See Goldfarb,* 766 F.2d at 865. The requirement that a practitioner wishing to practice in two states take the bar exam in both states is not excessive in light of the state's interest in regulating the profession.

### V.

Indiana has chosen to waive the bar exam requirement for a certain class of out-of-state practitioners. Scariano takes exception to the manner in which that class is defined. Yet the means Indiana has chosen to insure familiarity with its law are not so egregious as to offend the Constitution. Given the need to maintain the quality of the legal profession, a judgment that practicing predominantly in Indiana more often than not insures the desired level of familiarity with state law is not unreasonable.

ously unreasonable to make him take a second     bar exam." *Sestric,* 765 F.2d at 660.

For these reasons, the judgment of the district court is

AFFIRMED.