**Bernard L. HERRO, Plaintiff–Appellant,**

v.

**CITY OF MILWAUKEE, Thomas C. Nardelli, Paul A. Henningsen, Donald F. Richards, and Annette Scherbert, Defendants–Appellees.**

No. 94–2599.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1994.

Decided Jan. 5, 1995.

Deborah S. Herro (argued), O'Donnell Law Office, Greendale, WI, for plaintiff-appellant.

Grant F. Langley, Bruce D. Schimpf (argued), Office of the City Atty., Milwaukee, WI, for defendants-appellees.

Before CUMMINGS, ESCHBACH and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Bernard Herro ("Herro") sought to open a tavern in a Milwaukee commercial area. Council members of the City of Milwaukee had other ideas; hence Herro's lawsuit alleging a violation of his Fourteenth

Amendment right to equal protection, the subject of this appeal. On May 16, 1994, a district judge granted summary judgment on plaintiff's 42 U.S.C. § 1983 claim to defendants, the City of Milwaukee and four individuals who as city council members had rejected Herro's tavern license application. The district judge ruled that defendants had adequately rebutted plaintiff's claim that the license denial, coupled with another individual's successful application for the same license nine months later, violated the Equal Protection Clause. Herro appeals this decision.

## FACTS

On June 26, 1987, Herro filed applications with the City of Milwaukee for a Class "B" tavern license and an occupancy permit for the premises located at 645 North 7th Street.[1] Herro entered into a lease agreement for the property, then vacant, with its owner on the same day. In July 1987, Herro appeared before the Utilities and Licensing Committee of the City of Milwaukee Common Council ("Committee") for a determination of his Class "B" license.[2] Instead of voting on his application, however, Committee members delayed the vote at the request of defendant Paul Henningsen ("Henningsen"), the city alderman whose ward encompassed 645 North 7th Street. Henningsen expressed concerns about the premises' condition and the tavern's future operation.

In September 1987, Herro and Henningsen met to discuss the proposed tavern license. The parties disagree about the content of this conversation: Henningsen has stated by affidavit that Herro said he would not improve the premises; Herro has insisted that he stood ready to do the necessary improvements and told Henningsen as much. In any

event, Henningsen decided not to support Herro's application when it next came before the Committee.

Following several postponements, the Committee finally considered Herro's application in September 1988. At that meeting, all but one Committee member voted to deny the application based on a purported overconcentration of taverns in the vicinity. Nine months later, however, the same Committee members (minus Henningsen, who was no longer an alderman but appeared at the meeting in support of the new applicant) voted to approve the license application of Ralph Henry ("Henry") for the same premises. At that meeting, Henningsen stated that Henry was putting "substantial money" into the premises, which would be "of a class now or the type now that it's not going to attract the type of unsavory patrons that the place had in years gone by" (Def.App. 393).

Herro did not pursue a state court review of the license denial pursuant to Wisconsin law but instead brought this action. The district judge initially ruled that Herro had established a *prima facie* violation of equal protection that would survive defendants' motion to dismiss and motion for summary judgment. *Herro v. City of Milwaukee*, 817 F.Supp. 768 (E.D.Wis.1993). Judge Reynolds asked defendants to submit evidence of the reasons, beyond the asserted "overconcentration of outlets" which he deemed unsupported, for their decision to reject one application and to grant the next. Defendants submitted two reasons, indicating that fewer outlets were operating in the area and that Henry had obtained work permits, thus demonstrating a willingness to do the repairs that Herro had not. Subsequently, on May 16, 1994, the district judge granted summary judgment for defendants (Pl.App. A–2).

---

1. Liquor and tavern regulations are set forth in Chapter 90 of the Milwaukee Code of Ordinances. The Class "B" license permits licensees to "sell or offer for sale intoxicating liquors to be consumed by the glass only on the licensed premises." Milwaukee Code of Ordinances 90–4–1–b.

2. The Wisconsin statutes give largely unfettered discretion to local authority in issuing Class "B" tavern licenses. Section 125.51(1)(a) of the Wisconsin statutes states that "[e]very municipal

governing body may grant and issue ... "Class B" licenses ... as the issuing municipal governing body deems proper." Subsequent provisions place a few administrative limitations on this discretion, such as requiring specific procedures for setting licensing dates; but the only substantive limitations in the statutes prevent governing bodies from selling items to licensees and require them to state reasons when denying a renewal application. 125.51(1)(a)–(c) Wis.Stat. (1993).

## ANALYSIS

The district court granted summary judgment after defendants presented evidence that their licensing decision was not totally irrational or arbitrary. This limited showing—that the challenged action was rationally related to a legitimate state interest—is sufficient to defeat an equal protection claim that does not allege infringement on a fundamental right or reliance on a suspect classification. See *Scariano v. Justices of Supreme Court of State of Ind.*, 38 F.3d 920, 924 (7th Cir.1994); *DeSalle v. Wright*, 969 F.2d 273, 275 (7th Cir.1992). Plaintiff concedes that we must evaluate his claim according to the more lenient rational basis review (Pl.Br. 4–5), and we do so *de novo*. *Cliff v. Bd. of School Commissioners, City of Indianapolis*, 42 F.3d 403 (7th Cir.1994).

The district court here concluded that although there were disputed facts with respect to Herro's putative repair plans, the unchallenged fact that Henry procured work permits and provided renovation plans while Herro did not constituted "a conceivable or plausible basis for defendants' differential treatment of Herro's and Henry's applications" (Pl.App. A–2). Given this undisputed fact alone, Herro's claim must fail. Committee members might well have thought that a candidate who was willing to take affirmative steps, involving time and expense, toward making needed repairs would be a better tavern owner than one who had not taken similar actions. Henningsen stated in his affidavit that he was concerned about allowing an "in-and-out" owner to take control of the tavern, particularly since the surrounding area had experienced problems with litter and prostitution in the past. Under these circumstances, searching for an extremely responsible licensee would be a legitimate goal; and differentiating between two applicants based on the fact that one appeared more committed than the other to the long-term condition of the premises would be a rational means of achieving it.

Even were we to doubt the plausibility of defendants' asserted reasons for decision—and we do not—this Court is skeptical that Herro has established a *prima facie* equal protection claim. As we stated in a recent case involving applications for building permits, "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *New Burnham Prairie Homes v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990) (citations omitted).

The district court in this case acknowledged *New Burnham* but distinguished it, ruling that:

> [u]nlike the plaintiffs in *New Burnham*, Herro does not merely claim to have been treated differently than some other person.... he has shown that the adverse action taken against him was purportedly based on just two concerns ... and that each of these concerns applied with equal force nine months later when Henry's application was granted for the same building.

*Herro*, 817 F.Supp. at 772. The court ruled that the Equal Protection Clause prohibited "unfathomable" discrimination, in which an arbitrary state action signaled reliance on an otherwise indiscernible classification. *Id.*

Yet Herro's brief reveals that his claim is exactly that of being "treated differently than some other person," due not to his membership in some nebulous class but to the facts that Henningsen may have directed animosity toward him and that other Committee members may have been willing to sanction this personal prejudice. See Pl.Br. 14–15; Pl.Reply Br. 1–3 (asserting that Henningsen had previously made baseless claims against Herro's family and that Henningsen was motivated by "personal whim, prejudice, and capriciousness"). At least one lower court has interpreted our directives in this area to mean that claims of state action motivated by personal vendettas "are hardly the type of allegations necessary to sustain an equal protection claim." *Universal Sec. Ins. Co. v. Koefoed*, 775 F.Supp. 240, 247 (N.D.Ill.1991) (relying on *New Burnhmam* to dismiss equal protection claim based on allegations that state official engaged in vendetta to destroy plaintiff); see also *Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir.1992) ("the

state's act of singling out an individual for differential treatment does *not* itself create the class") (emphasis in original), affirmed, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

It is true that older cases from this Circuit suggest a broader reach to the Equal Protection Clause. See, *e.g.*, *Falls v. Town of Dyer*, 875 F.2d 146 (7th Cir.1989) (holding that a class of only one member can still complain of discrimination against his tiny class if he can show that a combination of legislative and executive action has singled him out for unique treatment). Yet we think that more recent cases, particularly *Albright*, place additional burdens on plaintiffs to identify the classification behind even a "class of one." Perhaps Herro's claim could be read as alleging discrimination based on his membership in a classification consisting of all members of the Herro family applying for new tavern licenses; this is slightly stronger than alleging no class at all, but we are not convinced that it would establish a *prima facie* equal protection violation. In any event, defendants here have submitted rational bases for their decision, and the district court's grant of summary judgment to defendants thus is affirmed.