INDIANA STATE TEACHERS ASSOCIATION, Plaintiff–Appellant,

v.

BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS, Defendant–Appellee.

No. 96–1792.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 1996.

Decided Dec. 2, 1996.

Richard J. Darko (argued), Lanae Harden, Lowe, Gray, Steele & Darko, Indianapolis, IN, for Plaintiff–Appellant.

David K. Herzog, Michael R. Maine (argued), Baker & Daniels, Indianapolis, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUDAHY and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The Indiana State Teachers Association, a labor union, brought this suit against the Indianapolis school board claiming that the school board had denied the Association the equal protection of the laws by refusing to allow the nonteaching staff of the Indianapolis public schools to elect a collective bargaining representative. This claim, which the district judge dismissed on the pleadings, 918 F.Supp. 266, 270–71 (S.D.Ind.1996), sounds remote indeed from any concern of the equal protection clause. Here is how the complaint tries to bring the case within the orbit of the clause: The nonteacher employees of Indiana's public schools are not covered by the National Labor Relations Act (see 29 U.S.C. § 152(2)) or any counterpart labor relations statute of Indiana. Nevertheless the Indianapolis school board has signed a succession of contracts with a local of the American Federation of State, County and Municipal Employees (AFSCME) appointing the local the exclusive bargaining representative of the school system's nonteacher employees. There has never been an election for the representative. The plaintiff Association, which represents public school teachers in collective bargaining—to which Indiana law entitles them, unlike the nonteacher employees of the public schools—would like to represent these nonteacher employees and it has obtained indications of support from a number of them. The school board refuses to consider abandoning its long-term relationship with the AFSCME local, and so will not permit an election for collective bargaining representative, which the plaintiff Association might win. The refusal to hold the election, the Association charges, discriminates between two similarly situated entities and therefore—since the school board is the "state" within the meaning of the Fourteenth Amendment—violates the equal protection clause unless a justification for the discrimination is shown, which is to say unless the two unions are not *really* similarly situated. The Association does not argue in this court that the board's motivation in preventing it from representing nonteaching employees has a political or ideological tinge, and so there is no issue of free speech—just one of equal protection.

 The school board argues that the Association cannot get to first base because it has not alleged discrimination against a *class*—blacks, aliens, children, railroads, whatever. Both the favored and the disfa-

vored, the Association and the AFSCME local, belong to the same class, that of labor unions interested in representing public-school employees. This argument is superficial. The equal protection clause does not speak of classes. A class, moreover, can consist of a single member, *Nixon v. Administrator of General Services*, 433 U.S. 425, 472, 97 S.Ct. 2777, 2805, 53 L.Ed.2d 867 (1977); *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995); *Falls v. Town of Dyer*, 875 F.2d 146, 148 (7th Cir.1989), or of one member at present; and it can be defined by reference to the discrimination itself. To make "classification" an element of a denial of equal protection would therefore be vacuous. There is always a class. The class discriminated against here consists of unions (of which in fact there is more than one) with which the Indianapolis school board refuses to deal because they do not already represent its nonteaching employees, or less grandly because they are not AFSCME, with which the board is content.

It would be especially odd to refuse the protection of the clause in a case in which two *identical* entities were treated differently, on the ground that since they are identical they must belong to the same class, so there is no discrimination against a class. If the two are *truly* identical the different treatment of them *must* be discriminatory; treating likes as unlike is the paradigmatic case of the unequal protection of the laws.

■ This court has upheld an equal-protection claim in two "class of one" cases, in which a governmental body treated individuals differently who were identically situated in all respects rationally related to the government's mission. In *Esmail v. Macrane, supra,* a liquor dealer was denied the renewal of his license solely because of the mayor's spite. In *Ciechon v. City of Chicago*, 686 F.2d 511, 522–24 (7th Cir.1982), two paramedics were identically responsible for the death of a patient, yet only one was disciplined and the city was mysteriously unable to give a reason (such as a desire to economize on enforcement resources or even to randomize enforcement, as in the ancient military practice of decimation) for the difference in treatment. There are similar cases

in other circuits. *Rubinovitz v. Rogato*, 60 F.3d 906, 911–12 (1st Cir.1995); *Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir.1989); *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir.1981); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir.1980); *Burt v. City of New York*, 156 F.2d 791 (2d Cir.1946) (L.Hand, J.); *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1083 (5th Cir.1989) (dissenting opinion). While the principal target of the equal protection clause is discrimination against members of vulnerable groups, the clause protects class-of-one plaintiffs victimized by "the wholly arbitrary act." *City of New Orleans v. Dukes*, 427 U.S. 297, 304, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam).

■ We think these cases are inapplicable, however, and that this case is indeed a nonstarter. The concept of equal protection is trivialized when it is used to subject every decision made by state or local government to constitutional review by federal courts. To decide is to choose, and ordinarily to choose *between*—to choose one suppliant, applicant, petitioner, protester, contractor, or employee over another. Can the loser in the contest automatically appeal to the federal courts on the ground that the decision was arbitrary and an arbitrary decision treats likes as unlike and therefore denies the equal protection of the laws? That would constitutionalize the Administrative Procedure Act *and* make its provisions binding on state and local government and enforceable in the federal courts. The Association is asking us to pronounce arbitrary a school board's decision not to open up its labor relations to competitive bidding. The review of such a decision not claimed to violate some other source of constitutional obligation such as the free-speech clause of the First Amendment is not the proper business of the federal judiciary, which would be operating without any guidance other than what might be thought implicit in the idea of arbitrary governmental action.

■ When as in *Ciechon* or *Esmail* the government is treating unequally persons who are prima facie identical in all relevant respects, the equal protection clause can be

brought into play as a protection against allowing the government to single out a hapless individual, firm, or other entity for unfavorable treatment. Although some of our cases have expressed skepticism about this principle in dicta, e.g., *Herro v. City of Milwaukee,* 44 F.3d 550, 551–52 (7th Cir.1995); *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1481 (7th Cir.1990), we reaffirmed it in *Esmail.* But when as in the present case the government is treating unequally two persons that are prima facie *unequal* in a rationally relevant respect—the union with which the government has been dealing contentedly for many years and the union that wishes not only to break up the cozy existing relationship but also to change the means by which a favored union shall be chosen in the future—the equal protection clause is inapplicable because the plaintiff is asking for a revision of policy rather than for a restoration of equality. *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir.1992); *Chicago Cable Communications v. Chicago Cable Comm'n,* 879 F.2d 1540, 1547 (7th Cir.1989).

There is nothing irrational or vicious about preferring the known quantity to the unknown. Spot markets are not the only markets. Trust and commitment are not unknown or misplaced in labor relations any more than in other relational or transactional settings. The situation of the AFSCME local, with which the school board has been dealing without the expense and frictions of an election for almost twenty years, and of the Association or any other union that wants to replace the AFSCME local is, far from being prima facie equal, radically unequal. The school board has a contract with the AFSCME local that it might be found to have violated if it held an election for bargaining representative, let alone if it attempted to implement the results of the election before the expiration of the contract. The contract is not in the record, but we were told at argument without contradiction that it will not expire until the end of next year.

It might be sounder social policy for the school board to treat the two unions more alike. The nonteaching employees might be better off with competition to be their collective bargaining representative, rather than being stuck with the AFSCME local, which has been chosen for rather than by them, almost as if it were a company union. The teachers might be better off too, because state law forbids them to strike but if a teachers union such as the Indiana State Teachers Association represents the blue-collar workers in the same schools it may be able to use the threat to call them out on strike to extract concessions for the teachers. Of course this is equally a reason the board might rationally prefer to continue with AFSCME. The considerations we have listed are the kind of considerations that shape the formulation of labor laws and labor relations policies, the design of the bargaining unit, and so forth. They are remote from the considerations that inform the quest for equality whether between groups or between individuals, and they are not the business of a court in enforcing the equal protection clause. See *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

Our reference to *Dandridge* is not meant to suggest that the Association has made out a prima facie case of denial of equal protection, placing on the school board a burden, however easy to carry, of showing that the unequal treatment had a rational basis. We do not think the Association made out even a prima facie case. For that would imply that any time the government denies a benefit to one person that it has granted to another, the loser has a prima facie case that his constitutional rights have been infringed. It is apparent from the face of its complaint that the Association is not in the same position as the union that received the benefit which the Association seeks. The Association has thus failed to clear the first hurdle, that of alleging that winner and loser are identically situated in all relevant respects. Only then would the burden shift to the state to show that their situations were not really identical.

Affirmed.

CUDAHY, Circuit Judge, concurring.

I have no quarrel with the result or with the observation that "[t]he concept of equal

protection is trivialized when it is used to subject every decision made by state or local government to constitutional review by federal courts." Op. at 1181. However, I do not believe that it is meaningful to say that ISTA is "asking for a revision of policy rather than for a restoration of equality." *Id.* at 1182. Every plaintiff who sues under the Equal Protection Clause desires a "revision of policy" precisely on the grounds that the revision would bring about a "restoration of equality." Whether we say that ISTA is not equally situated "in a rationally relevant respect," *id.*, and is thus barred from seeking a restoration of non-existent equality, or that ISTA is equally situated but that the disparate treatment has a rational basis, does not matter much. "Rational basis" thus seems to be the proper test under either approach, and we may use the same basic reasoning to reach either conclusion.

There is really no difficulty in saying that ISTA and AFSCME are equally situated but that the school board had a rational basis for distinguishing between them. This approach may put the burden of proof (such as it is) on the school board, unlike the majority's analysis, which presumably would place it on ISTA. Either way ISTA loses, but, since the board is the decisionmaker, it may appropriately be required to show that its choice was rational.