UNIVERSITY PROFESSIONALS OF IL-
LINOIS, LOCAL 4100, IFT–AFT, AFL–
CIO, and its Sangamon State University
Chapter, Mitch Vogel, President of the
University Professionals of Illinois, Lo-
cal 4100, Ron Ettinger, et al., Plaintiffs–
Appellants,

v.

James R. EDGAR, Governor of the State
of Illinois; Thomas Lemont, both as an
individual and in his official capacity as
President of the University of Illinois
Board of Trustees; Stanley O. Inkenber-
ry, both as an individual and in his
official capacity as President of the Uni-
versity of Illinois, et al., Defendants–
Appellees.

No. 96–3601.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1997.

Decided June 11, 1997.

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Barbara J. Hillman (argued), Robert A. Seltzer, Cornfield & Feldman, Chicago, IL, for Plaintiffs–Appellants.

Daniel N. Malato, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for James R. Edgar.

Thomas J. Piskorski (argued), R. Theodore Clark, Jr., Seyfarth, Shaw, Fairweather & Geraldson, Daniel N. Malato, Office of the Attorney General, Civil Appeals Division, Chicago, IL, Byron H. Higgins, Urbana, IL, for Thomas LeMont, Stanley O. Inkenberry and Naomi B. Lynn.

Daniel N. Malato, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Gerald E. Berendt.

Before POSNER, Chief Judge, and FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

By act of the Illinois State Legislature, Sangamon State University became the third campus of the University of Illinois, the University of Illinois at Springfield. Concomitant with this transformation was the consolidation of faculty labor representation into one bargaining unit comprised of faculty members for the three-campus system. Previously, the Illinois Educational Labor Relations Board had determined labor representation for employees of the state educational system. Faculty at the Chicago and Champaign–Urbana campuses had not been represented by a union for the purposes of collective bargaining; faculty at Sangamon State had. Appellants believe that this legislation harms the Sangamon State faculty, the Union once representing that faculty, as well as the whole of the University of Illinois faculty, and therefore challenge the constitutionality of the law. They now appeal from the district court's dismissal of their equal protection claim. Finding a rational basis for this legislation, we affirm the decision of the district court.

## I.

The challenged law is section 50–423 of Public Act 89–0004, which amended Section 7 of the Illinois Educational Labor Relations Act. Section 7 now reads, in pertinent part:

The sole appropriate bargaining unit for academic faculty at the University of Illinois shall be a unit that is comprised of non-supervisory academic faculty employed more than half-time and includes all tenured, tenure-track, and non-tenure track faculty employed by the board of trustees of that University in all of its undergraduate, graduate, and professional schools and degree and non-degree programs, regardless of current or historical representation rights or patterns or the application of any other factors. Any

decision, rule, or regulation, promulgated by the Board to the contrary shall be null and void.

115 Ill. Comp. Stat. 5/7 (West 1997).

In their complaint, appellants alleged that, because the law "nullifies the [Illinois Labor Relations] Board certified academic bargaining unit at Sangamon State," because the law "eliminated [sic] the [appellant] Union as the exclusive bargaining representative for the academic faculty at Sangamon State," and because the law "denies academic faculty at all campuses of the University of Illinois the right to Board determination of their appropriate bargaining units, without a reasonable basis," section 50–243 violates the Equal Protection Clause of the Fourteenth Amendment. Moreover, because appellants supported Governor Edgar's Democratic opponent, as well as Democratic candidates for the state legislature, in the November 1994 election, plaintiffs alleged that the state legislature and Governor Edgar were motivated by anti-union animus and that the purpose of the challenged legislation was to remove appellant Union as the representative of the Sangamon State faculty. Theorizing that several possible rational bases exist for the amendment, the district court dismissed the claim.

## II.

■ Collective bargaining is not a fundamental right; appellant Union and the faculty at the University of Illinois are not suspect classes. *See Indiana State Teachers Ass'n v. Board of School Commissioners*, 101 F.3d 1179, 1181 (7th Cir.1996). Thus, we will uphold this legislation so long as it bears a rational relation to some legitimate end. *See Romer v. Evans*, — U.S. —, —, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996); *Heller v. Doe*, 509 U.S. 312, 319–20, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993). No quantum of evidence is necessary to demonstrate this relationship between means and end: to defeat an equal protection claim subject to rational-basis scrutiny, defendants-appellees must only proffer a sound reason for the legislation. *See National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir.1995) ("[A] legislative de-

cision 'is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data.' ") (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993)); *see also Beach Communications*, 508 U.S. at 315, 113 S.Ct. at 2102 (It is "irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.") Whether or not we agree with a legislature's presumed judgment is of little moment, for we must only recognize the legitimacy of the retrospective logic. *See Heller*, 509 U.S. at 319, 113 S.Ct. at 2642 ("Rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' ") (internal citations omitted); *see also Beach Communications*, 508 U.S. at 313, 113 S.Ct. at 2100–01; *National Paint*, 45 F.3d at 1127.

■ With no opportunity for fact-finding in this case, we do not possess a developed record on the legislative judgment. None is necessary because adequate reasons abound. Relying on the Senate transcripts, the University argued to the district court that the thinking behind the amendment was that one bargaining unit would enhance the quality of education at the University of Illinois: faculty are an "integral part of the University;" if the faculty of the different campuses are linked for bargaining purposes, the faculty as a whole will be "much better off." Because the logic of this syllogism was not obvious, the district court noted two additional reasons for the legislation. First, one bargaining unit for the faculty of the three campuses could encourage the integration or assimilation of Sangamon State into the University of Illinois system. Second, negotiating with one bargaining unit which represented all faculty could promote efficiency in the administration of the three campus system. On appeal, appellees defend the legislation by breaking down these general rationales to provide us with fifteen distinct reasons, ranging from cost-savings to reducing competition among faculties for benefits to preventing single-campus strikes. We are satisfied that plausible, acceptable rationales for this legislation

exist. See *Beach Communications*, 508 U.S. at 313–14, 113 S.Ct. at 2100–02.[1]

Our inquiry would be at end, but for appellants' allegation that the legislature passed and Governor Edgar supported Section 50–243 out of a desire to harm a group that was in the camp of their political opposition. Again, we are operating without benefit of evidence, so that we cannot assess the validity of this claim. However, on rational basis review, this charge can be sorted out without resort to proof.

The Supreme Court recently reiterated in *Romer*, "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare ... desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Romer*, —— U.S. at ——, 116 S.Ct. at 1628 (quoting *Department of Agriculture v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2821, 2825–26, 37 L.Ed.2d 782 (1973)). In *Romer*, because the Supreme Court found that the challenged legislation was directed at no "identifiable legitimate purpose or discrete objective," it considered the possibility of political animus. Similarly in *Moreno*, the Court stated that, "[a] purpose to discriminate ... cannot, in and of itself and without reference to [some independent] considerations justify" the challenged legislation. *Moreno*, 413 U.S. at 534–35, 93 S.Ct. at 2826 (internal citations omitted) (brackets in original).

In the instant case, we do not have a "bare allegation" of political malice. Rather, we have a piece of legislation for which we have recognized a reasoned purpose. Section 50–243, in addition to enhancing the efficiency of university administration or bringing the erstwhile Sangamon State into the fold, may indeed have a deleterious effect on the politically active Local 4100. The possibility of such harm is insufficient to defeat a motion to dismiss in the face of an independent rational purpose for legislation that does not rest upon a suspect classification or implicate a fundamental right.

III.

Appellants also appeal the dismissal of their state "special legislation" and state equal protection claims. With no cognizable federal claim, the district court declined to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Similarly, because we dismiss appellants' federal claim, we affirm the district court's dismissal of their state claims without prejudice.

Accordingly, we AFFIRM the decision of the district court.

---

1. On appeal, appellants add a layer to their equal protection claim: they emphasize that appellees have given no rational basis to distinguish the academic faculty at Sangamon State from the other employees of Sangamon State or to distinguish the University of Illinois from the other multi-campus state systems. In response, defendants-appellees argue that the University of Illinois is unique in its structure, function, and interests as opposed to all state institutions of higher learning; the same could be said of the Sangamon State faculty versus its non-academic employees. In our view, this debate is superfluous: appellees need not give a reason for drawing the classification, as it is not suspect, but simply must provide a legitimate justification for the legislation. *See Beach Communications*, 508 U.S. at 316, 113 S.Ct. at 2102–03; *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).